**Juliana WILLIAMS, individually and as parent and natural guardian of Michael Williams, Plaintiff,**

**v.**

**AER LINGUS IRISH AIRLINES, Lufthansa German Airlines and Westinghouse Elevator Company, Defendants.**

**No. 85 Civ. 1935.**

United States District Court, S.D. New York.

March 13, 1987.

Simonson Hess & Leibowitz, P.C., New York City, for plaintiff; Alan B. Leibowitz, of counsel.

Bigham Englar Jones & Houston, New York City, for defendant Aer Lingus Irish Airlines; John Maccrate, III, Lisa J. Savitt, of counsel.

Hunton & Williams, New York City, for defendant Lufthansa German Airlines; J. Nicholas Suhr, of counsel.

J.M. Furey & R.J. Furey, Hempstead, N.Y., for defendant Westinghouse Elevator Company; Raymond J. Furey, Rosemary Cinquemani, of counsel.

## OPINION FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

This action was commenced by Juliana Williams on behalf of her infant son Michael ("Michael"), who was seriously injured on October 11, 1985, while ascending on an escalator at Kennedy Airport, New York. The escalator serves two airlines, Aer Lingus Irish Airlines ("Aer Lingus") and Lufthansa German Airlines ("Lufthansa"), who are named as defendants. Also named as a defendant is Westinghouse Elevator Company.

Michael, who at the time of the accident was nine years of age, was at the airport to say farewell to relatives who, after a visit here, were returning to Ireland. He was riding the upward moving escalator and when the step he was on reached the platform level and was about to move downward, his sneaker was caught between the moving escalator stairs and an opening at the top of the escalator caused by broken or missing "comb sections," trapping his right foot. The escalator continued in motion and, after some delay, the power was turned off and he was finally released.

The essential claim asserted against each defendant was negligence—in the instance of Aer Lingus and Lufthansa, the failure as co-lessees of the area, including the escalator, to keep it in reasonably safe condition for use by their patrons and the public. The claim against Westinghouse, who was under contract with each airline to maintain and keep the escalator in safe operating condition, was the negligent failure to do so. Each airline was also charged with negligence for failure to cut off power within a reasonable time after Michael's foot was trapped. Each defendant denied liability and, in the event of recovery against it, sought apportionment of damages against the other defendants.[1]

The case against Aer Lingus and Westinghouse was tried to a jury. The case against Lufthansa, which comes within the definition of a "foreign state" as defined by the Foreign Sovereign Immunities Act, was tried to the Court pursuant to 28 U.S.C. § 1441(d), with the jury verdict to be advisory. At the close of the entire case each defendant moved for a directed verdict, as to which the Court reserved decision. The jury reported a special verdict as follows: a total of $1,250,000 damages, of which $1,200,000 was for pain and suffering, past, present and future, and $50,000 for medical expenses, past, present and future. Liability was apportioned 45% against Aer Lingus ($562,500); 45% against Westinghouse ($562,500), and an advisory verdict against Lufthansa in the sum of $125,000 (10%). The jury also found that Michael was free of contributory negligence.

Each defendant moves for judgment n.o.v. pursuant to Fed.R.Civ.P. 50(b), or in the alternative to set aside the jury verdict pursuant to Rule 59 on the ground the award of damages is excessive.

A. THE MOTION FOR ENTRY OF JUDGMENT N.O.V. OR FOR A NEW TRIAL.

### Discussion

The test on a motion for a directed verdict made at the close of the party's case and at the close of all the evidence upon which the Court reserved decision is essentially the same as that applied on a motion for judgment n.o.v. Under familiar concepts, the Court may not substitute its judgment for that of the jury but is bound to view the evidence in the light most favorable to the prevailing party and to give it the benefit of all inferences which the evidence fairly supports, even though contrary inferences might be reasonably drawn. A trial court may correct a jury's decision only

---

**1.** At a conference on jury instructions held pursuant to Fed.R.Civ.P. 51, the lawyers representing Aer Lingus and Lufthansa were in agreement that apportionment and not indemnity was to be applied to all claims asserted in this case, see Trial Tr. at 497–99.

if after so viewing the evidence it is convinced that (1) there is a complete absence of probative evidence to support the verdict in favor of the prevailing party, or (2) that the evidence is so strong and overwhelmingly in favor of the nonprevailing party that reasonable and fair-minded persons in the exercise of impartial judgment could not render a verdict against it.[2]

Applying the foregoing standards, the Court finds no basis to grant either branch of the respective motions. The proof presented against each defendant met the required standard as to its negligence. There was ample evidence to sustain the charges of negligence. As to the airline defendants, the jury was instructed that as co-lessees they were under a duty to maintain and keep the escalator in reasonably safe condition for use by their patrons and the public, and the fact that they had engaged Westinghouse to maintain and service the escalator did not relieve them of liability.[3] The jury was further instructed that the airlines could be found liable only if they had actual or constructive notice of a defect and failed to notify Westinghouse of the defect so that it could be corrected.[4]

■ The evidence offered by plaintiff permitted a finding by the jury that one or two comb plates at the top of the moving escalator were broken or missing, caused by a misalignment condition which had existed for some time prior to the accident, and that Michael's sneaker was caught in the opening left by the broken or missing comb plates. The evidence also permitted a finding of a recent similar accident or accidents involving missing comb teeth or plates, a failure of each defendant to take prompt action to correct, within a reasonable time, the condition which was causing the breakage and that it was reasonably foreseeable that the event involving Michael was likely to occur. Additionally, as to each airline, the proof warranted a finding that each had failed to take reasonably prompt action to stop the escalator. As to Westinghouse, there was sufficient evidence upon which the jury could find that having been notified of a defect in the escalator which it was under a duty to keep in good repair and maintenance it failed to do so. Moreover, the evidence permitted a finding that each defendant, by its separate and independent acts of negligence, furnished the direct cause of injuries to Michael, and that each was responsible for the entire injury even though alone its negligence might not have caused the entire injury and even though the acts are not equal in in degree.[5]

The respective motions for judgment n.o.v. are denied and judgment may be entered in accordance with the special verdict as reported by the jury.

## B. THE MOTION TO SET ASIDE THE VERDICT PURSUANT TO RULE 59 ON THE GROUND THE AWARD OF DAMAGES IS EXCESSIVE.

■ The primary responsibility for the assessment of damages rests upon the jury, which has wide discretion. What is fair and reasonable compensation for temporary and permanent injuries, pain and suffering cannot be determined with the exactitude available through the use of an apothecary scale. In any given case there is a point at which an award may be excessive and a point below which it may be inadequate. In the area within those outer limits an award may be said to be fair and reasonable although individuals may differ as to the exact amount. While the award in the instant case approaches the outer limits of a fair and reasonable award, it cannot be said to be excessive. Even were this Court to disagree with the amount of the award, this would not suffice, by itself, to set aside the award. The Court may do

---

**2.** *Brinks v. City of New York,* 546 F.Supp. 403, 406–07 (S.D.N.Y.1982), *aff'd,* 717 F.2d 700 (2d Cir.1983) (citations omitted).

**3.** *Rogers v. Dorchester Associates,* 32 N.Y.2d 553, 562, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1971).

**4.** *Id.; see also Birdsall v. Montgomery Ward Co., Inc.,* 109 A.D.2d 969, 486 N.Y.S.2d 461, 463 (3d Dept.), *aff'd,* 65 N.Y.2d 913, 493 N.Y.S.2d 456, 483 N.E.2d 131 (1985).

**5.** New York Pattern Jury Instructions 2.330.

so only if the award was so excessive as to shock the judicial conscience, or if it concluded it was the result of passion or prejudice. The award does not shock the judicial conscience nor is it the product of passion or prejudice.[6] It is justified by the nature, extent, duration and permanency of the injuries sustained.

Michael's foot was wedged in the tread as the escalator continued in motion for some period until the power was finally turned off. He was rushed to a Queens County hospital where, because of the nature of the injury, it was decided that the best assurance to avoid the prospect of amputation of his foot was at the Microsurgery Department of Bellevue Hospital in Manhattan, New York City, to which he was rushed by ambulance with an emergency police escort. The microsurgery extended over eight hours and included removal of a major stomach muscle together with its artery and vascular pedicle, which was transplanted to the sole of his foot, amputation of the fifth toe, insertion of wires through the four remaining toes, and grafting from two separate donor sides on two separate occasions. Michael was hospitalized for approximately five weeks, during which he received extensive physical therapy and experienced great pain as a result of the operation and medical procedures. The injury was described as a crush injury of the right forefoot with fractures involving the four lesser toes, and a degloving injury involving a removal of a covering by the peeling back of the entire skin flap with the subcutaneous tissues, in this case of the sole of the foot from about the level of where the toes joined the forefoot back to the area where the long bones of the metatarsals end and the midfoot begins. For a period after the operation he required a walker to assist him in walking and a crutch to get up the stairs. For a substantial period after the accident he received therapeutic treatment.

Michael's permanent injuries include a one-half inch shortening of the right foot with an anticipated shortening of one and one-half inches, a difference of three shoe sizes compared to the unaffected foot; one-half inch calf atrophy; one inch thigh atrophy; deformity and dislocation of the forefoot and toe; clumping of toes, high arch deformity and loss of bone. With a life expectancy of sixty-two years, Michael faces future surgery to the graft site at the bottom of his foot; a permanent disability limp accompanied by pain (he brings the injured foot up in internal rotation when walking); he does not have a normal heeling gait pattern. The permanent limp and altering gait pattern affects his ankle, knee and hip joint as well as his lower back. With regard to the graft site at the bottom of the foot, the weakened area is such that one doctor was of the opinion that the area would continue to be subject to ulceration that may require surgical procedures of a full thickness skin graft rather than a split thickness skin graft which was initially applied.

The injuries also resulted in psychiatric and adjustment problems. Prior to the accident Michael was a normal youngster, participating in school and other activities with fellow students and friends. Since the accident he has withdrawn from many such previous pursuits and interests and he has difficulty in adjusting to the nature and severity of the injury. Michael testified that his foot felt like a "reject"; that he avoids looking at his scarred foot; that he experiences pain at the bottom of his foot, as if it were being stuck with needles; and that he has to put more weight on the injured side of the foot. He now walks with a limp and his running is impaired. Since the accident he has slept in his parents' room.

It is also without doubt that the injury was excruciatingly painful. A registered nurse who was present at the time of the occurrence and observed Michael's injury, testified that "It was gruesome, it was the most painful looking sight I have ever seen" in her twenty-seven years experience; she also testified that it was "so painful" with "massive torn flesh and you could see ... the bones of the child's foot.... [i]t was just a mangled mass."

6. *Dagnello v. Long Island R.R.*, 193 F.Supp. 552 (S.D.N.Y.1960), *aff'd*, 289 F.2d 797 (2d Cir.1961).

The motion to set aside the verdict as excessive is denied.

There remains for consideration the action of plaintiff against Lufthansa tried to the Court. The Court accepts the jury's advisory verdict apportioning damages against Lufthansa in the sum of $125,000 and herewith makes Findings of Fact and Conclusions of Law based upon its own independent fact finding.

### FINDINGS OF FACT

A. Plaintiff, Michael Williams, was injured on an escalator located in the Aer Lingus/Lufthansa area of the International Arrivals Building at John F. Kennedy International Airport, on October 11, 1985.

B. The escalator leading to the arrival and departure of the planes' area was a "common area" leased by Aer Lingus and Lufthansa from the Port Authority of New York and New Jersey.

C. The subject escalator was manufactured and installed by Westinghouse in 1971.

D. Lufthansa and Aer Lingus were parties to an agreement whereunder Aer Lingus agreed to assume responsibility for maintenance and repair of the escalator.

E. The subject escalator was maintained, serviced and repaired exclusively by Westinghouse at all times between 1971 and October 11, 1985, under preventive maintenance contracts made with Aer Lingus and Lufthansa.

F. Westinghouse undertook in said preventive maintenance agreements to inspect, maintain, service and repair the subject escalator on behalf of Lufthansa and Aer Lingus, and to keep the same at all times in proper working order.

G. On one or more occasions between September 1, 1985 and October 11, 1985, Westinghouse was notified by Aer Lingus of the existence of certain dangerous conditions or broken parts on the subject escalator which Westinghouse undertook to repair; to wit, comb sections at the right side of the upper landing portion of the escalator.

H. Comb teeth were found missing and/or broken at the top right side of the upper landing of the escalator immediately after plaintiff's accident.

### CONCLUSIONS OF LAW

1. Lufthansa, Aer Lingus and Westinghouse failed in their respective duty to the public and passengers using the escalator, although each knew, or in the exercise of reasonable care should have known, of the defective condition. The negligence of each contributed to the injuries sustained by the infant plaintiff, as more particularly referred in the defendants' motion for a verdict n.o.v.

2. The damages are apportioned against Lufthansa in the sum of $125,000.

The difference in the assessment of the percentage of liability against the two airlines is readily explainable based on an apportionment of fault. Lufthansa and Aer Lingus were parties to an agreement whereby Aer Lingus undertook responsibility for maintenance and repair of the facility. There was evidence that over a period of time, from September 7, 1985, to the date of the accident, that the escalator was out of alignment and teeth were breaking off, of which Aer Lingus' representative had actual notice. Lufthansa, in the light of their agreement as between the two airlines, was justified in relying upon Aer Lingus' representative to see that Westinghouse made the necessary repairs, which it failed to do. However, the agreement between Aer Lingus and Lufthansa did not relieve the latter of its responsibility of due care to the public and passengers.

Judgment may be entered accordingly in favor of the plaintiff and against Lufthansa in the sum of $125,000.

So ordered.