Alicia **TAYLOR**, Plaintiff,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, individually and d/b/a Amtrak, Defendant.**

**No. 93–CV–0535 (JRB).**

United States District Court, E.D. New York.

Nov. 4, 1994.

ment.

Richard M. Kenny, Sullivan & Lipakis, P.C., New York City, for plaintiff.

Lawrence Bailey, Samuel A. Moore, New York City, for defendant.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

Defendant National Railroad Passenger Corporation ("Amtrak") moves this Court un-der Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure for an order setting aside the jury verdict and entering judgment in its favor, or alternatively granting defendant a new trial. Defendant urges that extraneous juror communication and adverse publicity tainted the results of the trial, and that the jury awarded excessive damages. For the reasons set forth below, the Court finds that although no outside influence compromised the verdict, the damages awarded by the jury were excessive. The Court therefore grants defendant's motion for a new trial unless plaintiff elects to file remittitur of damages in excess of $283,585.15, the maximum damage award the Court finds supported by the record.

## BACKGROUND

Plaintiff, a seventy-five-year-old woman, was injured on October 27, 1991, when she arrived at Pennsylvania Station in New York City on defendant's train bound from Niagara Falls. Escalator #15, which is located in the center of Amtrak's main waiting room and ascends from the lower level of the station to the waiting room, is within those portions of Pennsylvania Station owned, operated, and maintained by Amtrak. Plaintiff was riding Escalator #15 when she fell backwards, landing prone with her feet towards the top of the escalator. There was conflicting testimony as to whether plaintiff's head actually struck the escalator stairs or hit the side of the escalator. Harold Thompson, a red cap employed by Amtrak, had been assisting plaintiff with her luggage and was standing directly behind her at the time she fell. Mr. Thompson testified that he caught plaintiff, successfully preventing her head from striking the stairs. The testimony did show, however, that plaintiff's head and a portion of her body came into contact with the right side of the escalator.

At trial it was undisputed that at the time of the accident the moving handrail on the right side of the escalator, which plaintiff testified she had been holding, stopped abruptly. Plaintiff stated that the mobile stairs continued to ascend after the handrail failed, creating an effect whereby she felt as though she were being dragged backwards

down the stairs by the handrail. Plaintiff claimed, and defendant conceded, that Escalator # 15 malfunctioned as a result of defendant's negligence, and that this negligence was a cause of the accident. Defendant urged unsuccessfully at trial, however, that plaintiff's own negligence contributed to her injuries, in that plaintiff would not have been injured or would have sustained a less serious injury if she simply had released the right-hand handrail and continued up on the escalator stairs.

The case was tried before this Court and heard by a jury on August 2, 3, and 4 of this year. After finding no contributory negligence, the jury returned a verdict in favor of plaintiff in the amount of $383,585.15. The jury awarded plaintiff $105,000 for pain and suffering from the date of the accident to the date of the verdict; $3,585.15 for medical expenses incurred by plaintiff; and $275,000 in damages to compensate plaintiff for future pain and suffering. The jury specified that the award for future pain and suffering was meant to compensate plaintiff for a remaining life expectancy of twelve years.

### DISCUSSION

**A. Defendant has Failed to Show its Entitlement to Judgment as a Matter of Law Under Rule 50(b)**

■ Where, as here, a party moves jointly under Federal Rules of Civil Procedure 50(b) and 59(a), the court must rule separately on each motion. 5A *Moore's Federal Practice*, ¶ 50.13[1], p. 50–112 (Second Edition). Rule 50(b) permits a party to renew post-verdict a motion for judgment as a matter of law made and denied at the close of all the evidence. The initial motion, brought before submission of the case to the jury, is a prerequisite to any motion brought after trial. *Id.* at ¶ 50.09, p. 50–96. Here, defendant's failure to move for judgment at the close of evidence bars it from bringing the present Rule 50 motion. Assuming this remedy had been preserved adequately, Amtrak has failed to demonstrate its entitlement to judgment as a matter of law.

■ The courts within this Circuit employ an "appropriately strict" standard when deciding a Rule 50(b) motion. *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir.1988). The district court may grant the motion only upon a showing that "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163, 168 (2d Cir.1980). *See also Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993). In deciding a Rule 50 motion, the court is constrained to view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in its favor. *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 60 (2d Cir.1993). The court cannot "assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Mattivi*, 618 F.2d at 167. If the court finds that it should set aside the verdict for insufficiency of evidence, Rule 50(b) accords the trial judge the option of entering judgment as a matter of law or ordering a new trial. Fed.R.Civ.P. 50(b).

■ Drawing all inferences in plaintiff's favor, it is clear that the verdict here is not against the weight of the evidence. Amtrak admitted at trial that it had acted negligently, and conceded that its negligence played at least some part in bringing about plaintiff's injuries. Thus, on the question of liability, the sole issue before the jury was plaintiff's alleged contributory negligence. Plaintiff testified that when the right-hand rail stopped moving, she responded by grabbing that rail, which she already had been holding, more tightly. Defendant urged that this reaction was unreasonable, and that plaintiff should have taken some affirmative action to prevent her fall, for instance releasing the malfunctioning handrail or taking hold of the rail on the left-hand side of the escalator. Amtrak argued that had plaintiff done so, she simply would have continued up the escalator, successfully averting any injury.

After thoroughly reviewing the trial transcript and carefully considering the parties' contentions, the Court finds that Amtrak failed to carry its burden with respect to its defense of contributory negligence. Although plaintiff did admit that she clutched the handrail on the right side of the escalator even more tightly once the rail malfunctioned, plaintiff, who at the time of the accident was approximately seventy-two years old, also testified that she was very frightened and was experiencing the sensation of moving backwards. Under these circumstances, the jury properly could view plaintiff's reaction as reasonable and conclude that defendant was 100% liable for plaintiff's injuries.

■ Defendant's proof also falls short of establishing a complete absence of evidence supporting the jury's damage award. Although the jury awarded plaintiff a very generous sum, it cannot be said that plaintiff's case was so bereft of proof supporting her injuries that the Court is justified in entering judgment as a matter of law in favor of defendant. The parties agree that plaintiff fell while riding upon Escalator # 15. Plaintiff testified that as a result of the fall she experiences constant pain in her right side and leg, numbness in her right hand, and has great difficulty walking. She stated that she no longer has the ability to perform daily tasks such as shopping and laundry, and has lost the independence she enjoyed before the accident. Plaintiff described a variety of injuries for which she has received continuing medical treatment, and stated that she had seen her treating physician as recently as one week before trial.

Plaintiff's expert, Dr. Paul Post, testified that a standard magnetic resonance imaging examination (an "MRI") revealed three disc herniations, one disc bulge, and a straightening of plaintiff's normal spinal curve. He testified that during his examination of plaintiff he noted areas of decreased sensation on plaintiff's right hand, tightness in the musculature surrounding plaintiff's neck, a weakening of plaintiff's ability to grasp with her right hand, and an inability to fully extend and raise her arms. Although defendant's expert testified, and on cross examination

plaintiff's expert agreed, that plaintiff suffered from degenerative arthritis, the jury reasonably and fairly could conclude from the testimony presented that plaintiff demonstrated an injury, including the aggravation of her pre-existing condition, that was caused by her fall.

**B.** *Defendant is Not Entitled to a New Trial on the Basis of Improper Juror Communication or Adverse Publicity*

■ Defendant similarly has not convinced the Court that extra-record information, whether media coverage or improper juror communication, tainted the results of the trial. Defendant urges this Court to apply a rebuttable presumption of prejudice standard in determining whether the allegedly improper communication and media publicity had a deleterious effect on the jury. Although several jurisdictions have adopted this standard, *see, e.g., United States v. Howard,* 506 F.2d 865 (5th Cir.1975), *Haley v. Blue Ridge Transfer Co.,* 802 F.2d 1532 (4th Cir.1986), this Circuit has yet to embrace "such a rigid standard for the 'extraneous information' circumstance but has left it to the district court to determine 'the nature of what has been infiltrated and the probability of prejudice.'" *In re New York Asbestos Litigation,* 847 F.Supp. 1086, 1100 (S.D.N.Y.1994) (quoting *United States ex rel. Owen v. McMann,* 435 F.2d 813, 818 [2d Cir.1970], *cert. denied,* 402 U.S. 906, 91 S.Ct. 1373; 28 L.Ed.2d 646 [1971]). This test is an objective one, and is measured by reference to the "probable effect" an extraneous source likely had on the "hypothetical average juror.'" *United States v. Calbas,* 821 F.2d 887, 896 n. 9 (2d Cir.1987), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1114, 99 L.Ed.2d 275 (1988). *Accord In re New York Asbestos Litigation,* 847 F.Supp. at 1101.

■ Amtrak claims that the presence of a juror's mother in the spectator section of the courtroom during the trial and her purported contact with plaintiff and plaintiff's companion infected the jury's deliberations and prejudiced defendant. After the jury returned its verdict and defendant discovered the relationship between the juror and spectator, the Court permitted defense counsel to question

the juror during a telephone interview. Counsel for Amtrak admits that the juror stated that she had not discussed any of the evidence adduced at trial nor any other specifics of the case with her mother. Nevertheless, defendant argues that an improper influence played a role in the jury's decision. In order to succeed in its quest for a new trial, however, defendant must do more than raise speculative allegations of jury taint. Here, Amtrak has failed entirely to specify what, if any, information the spectator impermissibly relayed to the jury, and likewise has presented no facts upon which the Court could measure the likelihood of prejudice.

Nor has defendant shown that the jury's impartiality was sacrificed by publicity surrounding a derailment involving one of defendant's trains. On the morning of August 3, 1994, before the jury was seated, defense counsel voiced concern over media coverage of a derailment which had occurred on August 2, 1994, the first day of trial. The Court heard argument outside the presence of the jury regarding the possible adverse effect coverage of the derailment could have on the jury. The Court then questioned the jury in banc, asking each of the eight jurors whether he or she had heard or seen anything about Amtrak that might effect his or her ability to render a fair and impartial verdict in the case. Each juror responded unequivocally in the negative. The voir dire held on the morning of August 3 was sufficient to alleviate any concerns the defense may have had regarding jury taint. If, as defendant now apparently claims, no real media impact would have occurred until later in the day on August 3 (when news media would have had sufficient time to cover the story), defendant had ample opportunity to request a second voir dire before the jury began deliberating on the morning of August 4. In any event, the voir dire conducted on August 3 thoroughly convinced the Court that each member of the jury was able and willing to render a true, fair, and impartial verdict free from outside influence.

C. *Defendant is Entitled to a New Trial on the Issue of Damages Under Rule 59(a)*

When proceeding under Rule 59(a), the court may order a new trial even where substantial evidence supports the jury's verdict. *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992). Unlike judgment as a matter of law, the court is not constrained to view the evidence on the record in the light most favorable to the nonmovant, *Paper Corp. of the U.S. v. Schoeller Technical Papers, Inc.*, 807 F.Supp. 337, 347 (S.D.N.Y.1992), but rather conducts its own "detailed appraisal of the evidence." *Grunenthal v. Long Island R.R. Co.*, 393 U.S. 156, 159, 89 S.Ct. 331, 333, 21 L.Ed.2d 309 (1968). Generally, a new trial is proper where "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir.1988).

The courts of this Circuit consider a jury verdict excessive "if it is so high as to 'shock the judicial conscience.'" *Schneider v. National R.R. Passenger Corp.*, 987 F.2d 132, 137 (2d Cir.1993) (quoting *Nairn v. National R.R. Passenger Corp.*, 837 F.2d 565, 567 [2d Cir.1988] ). Because the calculation of damages traditionally is within the province of the jury, *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir.1990), the court must accord substantial deference to the jury's findings of fact. *Smith v. National R.R. Passenger Corp.*, 856 F.2d 467, 472 (2d Cir. 1988). Although the law accords a jury broad discretion in ascertaining damages, the law does not permit a jury to "abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket." *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir.1987). Rather, the award must be fair and reasonable, and the injury sustained and the amount awarded rationally related. This remains true even where intangible damages, such as those compensating a plaintiff for pain and suffering, cannot be determined with exactitude. *See Williams v. Aer Lingus Irish Airlines*, 655 F.Supp. 425, 427 (S.D.N.Y.1987).

If after weighing the evidence the court finds that a jury verdict is excessive, the court has the option of ordering a complete new trial or a trial limited to damages. *Phelan v. Local 305 of the United Ass'n of Journeymen*, 973 F.2d 1050, 1064

(2d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). Alternatively, the process of remittitur allows the court to grant a Rule 59(a) motion, while presenting the plaintiff with the choice of either submitting to a new trial or agreeing to the reduced damage award that the court considers justified. *Id.*

 In weighing the propriety of the nearly $384,000 verdict involved here, this Court properly may look to the amount of damages awarded to other plaintiffs in cases involving comparable injuries. *Schneider,* 987 F.2d at 137. However, the Court should not view these awards in a vacuum, but should take into consideration plaintiff's particular injuries and the unique circumstances of this case. *Id.* Both parties have cited and discussed a plethora of cases that they allege closely parallel the circumstances here. After reviewing jury verdicts rendered in analogous cases and conducting an independent appraisal of the evidence adduced at trial, the Court concludes that the $275,000 awarded for future pain and suffering exceeds the amount of damages reasonably supported by the record, and remittitur provides the most fair and efficient means by which to dispose of the present motion.[1]

The Court here finds significant the fact that plaintiff suffered from a pre-existing condition and required no surgery or period of hospitalization as a result of her fall. Other courts have viewed such factors as determinative. For example, in *Gumbs v. Pueblo Int'l, Inc., supra,* the Court of Appeals for the Third Circuit further reduced a $900,000 damage award which the district court previously had reduced to $575,000. The plaintiff in *Gumbs,* like plaintiff here, suffered disc herniations and sought damages to compensate her for pain and suffering, mental anguish, and loss of enjoyment of life. After reviewing decisions in cases involving comparable injuries, the Third Circuit concluded that an award of $575,000 stood outside "even the outermost limits of the range of reasonable and acceptable verdicts for the injury the plaintiff sustained." 823 F.2d at

773. Although the *Gumbs* court recognized that the plaintiff's injuries "were not trivial," *id.,* the fact that plaintiff did not submit to surgery, required no hospitalization, and suffered from a pre-existing back condition collectively led the court to conclude that the maximum recovery a jury reasonably could have awarded for past and future pain and suffering would have been $235,000.

Other courts have held similarly. For instance, in *Seidman v. American Airlines, Inc.,* 923 F.2d 1134 (5th Cir.1991), the Fifth Circuit Court of Appeals further reduced a jury award which the district court previously had reduced to $487,000, $250,000 of which was meant to compensate plaintiff for non-economic losses including pain and suffering. Relying principally on the fact that plaintiff had a pre-existing spinal condition, the court concluded that "the highest possible award that can be made for Seidman's pain and suffering, permanent disability and other non-economic losses is $100,000." 923 F.2d at 1141. Likewise, in *Nairn v. National R.R. Passenger Corp., supra,* the Court of Appeals for the Second Circuit vacated and remanded a jury verdict awarding approximately $400,000 for past and future pain and suffering. In *Nairn,* the plaintiff had suffered a back injury resulting in a 15% permanent functional impairment and non-curable disc degeneration. After reviewing awards granted in cases involving comparable injuries and noting that Nairn required no surgery nor period of hospitalization other than his initial visit to the emergency room, the court concluded that "an award for pain and suffering of at least $400,000 for a 15% functional impairment is one that 'shocks the judicial conscience.'" 837 F.2d at 568. *See also Williams v. Martin Marietta Alumina, Inc.,* 817 F.2d 1030 (3d Cir.1987) (court held excessive jury award of $300,000 for pain and suffering where plaintiff was never hospitalized for his injuries, sustained no herniated or bulging disc, and suffered from a pre-existing degenerative condition).

The Court is cognizant that plaintiff has lost a measure of the independence she once

---

1. Because the Court holds that the jury did not base its verdict on sympathy or prejudice, remittitur remains a proper means by which to resolve the present motion. 11 Wright & Miller *Federal Practice and Procedure,* Civil § 2815, p. 103 (1973).

enjoyed before the accident, and currently suffers from a condition that not only is painful but also presents little hope of improving with the passage of time. However, plaintiff testified that pain medication alleviates much of her discomfort and allows her to engage in a portion of her normal daily activities. Plaintiff required no surgery or period of hospitalization as a result of the accident, and, according to the testimony provided by plaintiff's own medical expert, it is highly unlikely that she will undergo any surgical procedure in the future. The Court also views with great significance plaintiff's age and condition at the time of the accident. The parties and their experts agree that plaintiff is an elderly woman who suffers from degenerative arthritis. Indeed, defendant's expert testified that in his opinion some, if not all, of plaintiff's symptoms originate from degenerative disc disease and her arthritic condition, rather than from the accident at issue. Plaintiff's life expectancy, as set forth in the mortality tables and as decided by the jury, is limited to twelve years.

Based on verdicts rendered in analogous cases and the evidence adduced at trial, this Court is of the opinion that a properly functioning jury should have found that a maximum award of $175,000 reasonably and fairly would compensate plaintiff for her future pain and suffering. Plaintiff therefore has the option of accepting a total reduced damage award of $283,585.15, or facing a new trial on the issue of damages.

## CONCLUSION

For the reasons set forth above, defendant's motion under Rule 50(b) for judgment as a matter of law hereby is DENIED. Defendant's Rule 59(a) motion for a new trial on the issue of damages hereby is GRANTED unless plaintiff accepts remittitur of damages in excess of $283,585.15, the maximum amount of damages this Court finds reasonably supported by the record. A new trial on the issue of damages is scheduled to commence Monday, December 5, 1994, unless plaintiff files remittitur with this Court within fourteen (14) days of the date of this order.

SO ORDERED.