OPINION AND ORDER
 

 WILLIAM C. CONNER, Senior District Judge.
 

 Defendant Jason Robles is a New York State trooper who was found guilty of abridging the Fourth Amendment rights of plaintiff Matthew T. Whitton in a civil trial on June 24, 1999. Robles now moves pursuant to Fed.R.Civ.P. 50(b) for judgment as a matter of law as to Whitton’s Fourth Amendment claim of unreasonable search and seizure, or, in the alternative, for a new trial on that claim pursuant to Fed. R.Civ.P. 59(a). For the reasons that follow, the Rule 50 motion for judgment as a matter of law is granted and the Rule 59 motion for a new trial is denied.
 

 BACKGROUND
 

 In February 1998, Whitton (hereinafter, “plaintiff’) and Heather Trail
 
 [1]
 
 commenced this action against Robles and fellow state trooper Marlando Williams pursuant to 42 U.S.C. § 1983 for alleged violations of their Fourth Amendment rights. Plaintiff and Trail claimed, among other things, that Robles and Williams, acting under color of state law, violated their constitutional right to be free from unlawful searches and seizures during a vehicle and traffic stop on August 19, 1995, which resulted in Whitton’s arrest for driving while intoxicated (DWI).
 

 The action was tried before a jury from June 21 to 24, 1999. The jury found in favor of defendants as to whether: (1) defendants violated plaintiffs constitutional right to be free from unreasonable
 
 *423
 
 searches and seizures when plaintiff was stopped and detained; and (2) whether defendants used excessive force against plaintiff.
 
 (See
 
 Sabatini Decl., Ex. A.) However, the jury found in favor of plaintiff on the issue of whether defendants violated his constitutional right to be free from unreasonable searches and seizures when they arrested plaintiff for DWI.
 
 (See id.)
 
 The jury further found that defendant Williams was entitled to qualified immunity and was therefore not liable for violating plaintiffs rights, but that defendant Robles was not entitled to qualified immunity.
 
 (See id.)
 
 The jury awarded Whitton $500 in compensatory damages and $1,000 in punitive damages.
 
 (See id.)
 

 A. Whitton’s Trial Testimony
 

 Plaintiff testified that on August 18, 1995, he worked until five o’clock, then socialized for two or three hours with friends at the fire house where he was a volunteer. (Trial Tr. at 265.) He stated that he had three beers with his friends, went home to shower, change clothing and eat, and then went to a dance club in nearby Stamford, Connecticut. He stated that while he was there, he drank another two beers.
 
 (Id.
 
 at 267, 269.)
 

 Plaintiff further testified that he was in custody for about two hours prior to his arrest for DWI. He stated that he was not asked to submit to field sobriety tests such as walking a straight line, reciting the alphabet, or standing on one leg. (Trial Tr. at 289-90.) Plaintiff also testified that defendants did not perform a gaze nystag-mus test, stating that at “[vjarious points they had lights in my eyes but never had me follow a pen.”
 
 (Id.
 
 at 291.) He testified that he told the troopers that he had five beers over a ten-hour period.
 
 (Id.
 
 at 338.) He said that during the trip from the scene of the stop to the barracks, Williams, who was sitting in the passenger seat of the police car while Robles was driving, read plaintiff his rights and told him that he was under arrest.
 
 (Id.
 
 at 340.)
 

 Plaintiff testified that after the troopers drove him to the police barracks, he submitted to a Breathalyzer test administered by Robles.
 
 (Id.
 
 at 294.) Plaintiff said he asked Robles if he could see the results, but that request was denied.
 
 (Id.
 
 at 296.) Before leaving the barracks that evening, plaintiff stated, he signed a DWI bill of particulars which gave the results of the Breathalyzer test.
 
 (Id.
 
 at 343-44.)
 

 B. Trail’s Trial Testimony
 

 Heather Trail testified that she accepted an offer from plaintiff for a ride home at about 2:15 a.m. on August 18, 1995 after the two had spent several hours in a dance club. Trail testified that she saw plaintiff drinking beer at the club, and at the time he offered her a ride home he was able to walk and talk “fine.” (Trial Tr. at 73.) Trail said that when they approached a stop sign at the intersection of Westches-ter and Trinity Avenue in Pound Ridge, New York, plaintiff “put his blinker on to take a left and stopped at the stop sign; looked both ways.”
 
 (Id.
 
 at 78.)
 

 Trail testified that at about 2:45 a.m., they were pulled over by troopers who ordered them at gunpoint to exit the car.
 
 (Id.
 
 at 85-86.) Trail and Whitton were handcuffed and placed in separate police cars. Trail said that she was questioned for two hours, then taken by car to a supermarket where one of the troopers told her that the alarm was going off in the market. (Id. at 89-92.) Trail stated that the troopers eventually returned her to Whitton’s parked Blazer. They asked Trail whether she had been drinking and she said she told them “that I had about four or five drinks.”
 
 (Id.
 
 at 93.) The troopers released her and gave her the keys to Whitton’s car, which she drove home.
 
 (Id.
 
 at 94.)
 

 C. Robles’ Trial Testimony
 

 Defendant Robles testified that at about 2:20 a.m. on August 19,1995, he received a call from the barracks that an electronic intrusion device, an alarm, was going off in
 
 *424
 
 Pound Ridge, New York. (Trial Tr. at 112.) After checking out a bank, Robles and his partner Williams discovered that the alarm originated from a supermarket. As the troopers approached the supermarket, Robles testified, he saw three people run off in different directions.
 
 (Id.
 
 at 118.) The troopers stopped a car on Westchester Avenue and during that stop, Robles saw plaintiffs Blazer drive past. Robles stated that he stopped plaintiffs Blazer as part of his investigation into the potential burglary.
 
 (Id.
 
 at 129.) Robles was joined by a Connecticut trooper and by Williams and three other New York State troopers, including a sergeant.
 
 (Id.
 
 at 135.) Robles testified that when he ordered plaintiff to exit his car, he did so at gunpoint.
 
 (Id.
 
 at 142.) Robles ordered plaintiff to walk backwards and kneel with his hands on his head.
 
 (Id.
 
 at 145.)
 

 At some point, Robles left the scene of plaintiffs stop and went with the sergeant to the scene of the purported burglary, leaving other troopers with plaintiff. Robles testified that at the scene of the purported burglary, the sergeant told him that if he did not believe Whitton and Trail were involved in the burglary, he could release them. (Trial Tr. at 158.)
 

 However, when Robles returned to the scene of plaintiffs traffic stop, he testified, Trooper Pierce told him that plaintiff had been drinking.
 
 (Id.
 
 at 158.) Robles then asked plaintiff, who was handcuffed in the back of the patrol vehicle, whether he had been drinking and plaintiff told him he had.
 
 (Id.)
 
 Robles said he then performed a gaze nystagmus test on plaintiff and found plaintiff was intoxicated.
 
 (Id.
 
 at 203.) Robles testified that in the nine months of service he had at the time of plaintiffs arrest, he had performed the gaze nystagmus test about thirty times, with about half of those tests having been performed on detainees and half on volunteers for training purposes.
 
 (Id.
 
 at 214-15.) Robles said that further sobriety tests on plaintiff were unnecessary and he feared that plaintiff could hurt himself in the course of performing additional tests.
 
 (Id.
 
 at 229.)
 

 D. Williams’ Trial Testimony
 

 Williams testified that while he was approaching a vehicle he and Robles had stopped, Robles told him that he saw a black Chevy Blazer and “indicated to me that he thought that was them or further people that were involved [in the purported burglary] and I told him to pursue, go ahead .and stop the vehicle.” (Trial Tr. at 398.) Williams stated that the Blazer “came up rather quickly to the stop sign. It braked, it moved to the intersection, stopped again and then turned left and went northbound on Westchester Avenue.”
 
 (Id.
 
 at 398.) Williams stated that the Blazer did not brake at the stop sign, but in the intersection.
 
 (Id.
 
 at 399.) However, Williams said he did not cite plaintiff for that alleged violation, nor was it written on the DWI bill of particulars, which includes a space to list potential traffic offenses.
 
 (Id.
 
 at 419-20.)
 

 Williams stated that after they stopped plaintiff he smelled alcohol on plaintiff and asked plaintiff whether he had been drinking. Williams testified that plaintiff told him he had drunk five beers,
 
 (id.
 
 at 408), and that he did not ask plaintiff over what period of time he consumed those beers.
 
 (Id.
 
 at 427.) Williams said that he was the arresting officer and that he arrested plaintiff based on the following factors:
 

 It was the strong odor of alcoholic beverage on his person. The fact that he was driving a vehicle in an erratic way, and as far[ ] as I’m concerned, through a ' stop sign, made a quick left like he was trying to evade the police. Also confirmed with Trooper Robles and Trooper Pierce the[ir] determination as well concurred with mine and I made the final decision to place him under arrest for driving while intoxicated.
 

 (Id.
 
 at 409.)
 

 Williams testified that he did not record in the DWI bill of particulars that plaintiff
 
 *425
 
 drove through a stop sign.
 
 (Id.
 
 at 419.) He also testified that Trooper Robles and Trooper Pierce, another officer on the scene, “did field sobriety tests. They did a variety of tests.”
 
 (Id.
 
 at 421.) Williams stated that he saw Robles administer a gaze nystagmus test to plaintiff,
 
 (id.),
 
 but that he himself did not perform any field sobriety tests because he “was satisfied that Mr. Whitton was intoxicated at the time.”
 
 (Id.
 
 at 432.) Williams also testified that he was not qualified to give the gaze nystagmus test.
 
 (Id.)
 

 Williams said that he and Robles took plaintiff to the police barracks where Williams watched Robles administer a Breathalyzer test. Williams said that plaintiff “met the legal requirements and exceeded it, the test, he failed it.”
 
 (Id.
 
 at 412.)
 

 E. Pierce’s Trial Testimony
 

 Trooper Pierce assisted defendants with their stop
 
 of
 
 plaintiff. Pierce testified that plaintiff “had a strong odor of alcoholic beverage on his breath” and that “he was having trouble maintaining his balance.” (Trial Tr. at 449.) Pierce stated that he performed a gaze nystagmus test on plaintiff and determined from the test results that plaintiff was intoxicated.
 
 (See id.
 
 at 459.) Pierce said that of six “clues” for which the test is designed to examine, plaintiff failed all six. He said a person who fails two of the six “clues” would fail the test.
 
 (Id.
 
 at 457-58.)
 

 F. Documentary Evidence
 

 Several pieces of documentary evidence were submitted to the jury, including the DWI Bill of Particulars supporting Whit-ton’s DWI arrest and a decision by Town of Pound Ridge Justice Regina F. Kelly granting Whitton’s motion to suppress evidence in the prosecution of Whitton’s DWI arrest.
 

 In her opinion, Justice Kelly made the following findings of fact: The defendant Matthew Whitton, while driving his vehicle ... on August 19, 1995 at 3:00 a.m. was stopped at gun point by New York State Trooper Robles, ordered to exit the vehicle in a certain manner, was handcuffed, was made to lie on the ground and was detained in the police vehicle for a period of one and one-half hours, before being charged with violation of Section 1192(3) and Section 1192(4) of the New York State Vehicle and Traffic Law. The arrest on August 19, 1995 took place while Trooper Williams and Robles were on patrol in response to a radio dispatch relay code alerting them to an alarm at an ATM machine at Seotts Corners Market.... The arresting officers had previously observed three white male individuals crossing the street on foot, in front of the market as they arrived. At the time of defendant’s arrest, the officers had not established that a crime had in fact occurred, nor had they established a connection between the Chevrolet 4x4 vehicle driven by the defendant and any vehicle seen or identified at the crime scene or in the radio dispatch. The officers testified that they would have stopped any vehicle in the vicinity at the time.
 

 People of the State of New York v. Whitton,
 
 slip op. at 10, Jan. 22, 1996 (Kelly, Town J.).
 

 Justice Kelly held that “Whitton was illegally stopped by police in violation of his constitutional rights.... ” Justice Kelly held that the officers did not have probable cause to stop Whitton in the first place, and stated: “The testimony of Officers Robles and Whitton indicates overzealous reaction, lack of training and disregard for individual constitutional rights.”
 
 (Id.
 
 at 12.)
 

 The jury also saw the DWI bill of particulars that supported the traffic information charging Whitton with DWI. There, under a section entitled “Probable Cause for Arrest,” Williams had checked off boxes for “Observation of the Defendant’s Driving”
 
 *426
 
 and “Odor of Alcoholic Beverage” as well as “Admissions By The Defendant: Oral.” (Defs. Trial Ex. E.) Williams had not marked on the form, although there was a space in which to do so, that Whitton failed the gaze nystagmus field test. (See
 
 id.)
 

 DISCUSSION
 

 I. Defendant’s Rule 50 Motion
 

 Rule 50 of the Federal Rules of Civil Procedure sets forth the requirements for setting aside a judgment by granting a motion for judgment as a matter of law. Rule 50(a) provides:
 

 If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
 

 Fed.R.Civ.P. 50(a).
 

 The rule further states in relevant part that:
 

 [i]f, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court’s later deciding the legal questions raised by the motion.
 

 Fed.R.Civ.P. 50(b).
 

 The Second Circuit has decided that judgment as a matter of law is limited to those issues “specifically raised in [a] prior motion for a directed verdict.”
 
 Cruz v. Local Union Number 3 of the Int’l Bhd. of Electr. Workers,
 
 34 F.3d 1148, 1155 (2d Cir.1994) (internal citation and quotations omitted). A motion for a directed verdict at the close of all evidence is a prerequisite for judgment as a matter of law.
 
 Id.
 
 Counsel for the moving party must “set forth a statement of the specific grounds it relies on for the relief sought.”
 
 Samuels v. Air Transport Local 504,
 
 992 F.2d 12, 15 (2d Cir.1993).
 

 Thus, we must decide, as a threshold issue, whether the movant met these procedural requirements. A review of the trial transcript reveals that at the close of plaintiffs case, counsel for defendants made the following motion as to whether defendants violated plaintiffs rights when they arrested him for DWI:
 

 [Wlith respect to the false arrest claim, we’re asking that be dismissed as a matter of law. The officers testified or Trooper Robles testified that there was a field test performed on the plaintiff at the site of where his vehicle was initially stopped. That, plus other observations, such as the strong odor of alcohol and the other circumstances that he observed together, give him probable cause to arrest the defendant for DWI and that probable cause was, in fact, verified by the Breathalyzer test.
 

 Só we would submit that the probable cause has, in fact, been established and goes undisputed, and we’re asking for judgment as a matter of law with respect to the false arrest claim.
 

 (Trial Tr. at 374.)
 

 After defendants rested, defense counsel renewed their Rule 50 motion, stating:
 

 We believe that the officers acted-reasonably and did not believe they were violating any federal constitutional rights of the plaintiff at the time they took the actions that they took, and we’re renewing our Rule 50 motion with the additional affirmative defense of qualified immunity.
 

 (Id.
 
 at 513.)
 

 Defendants have met the threshold requirement of having made a Rule 50 motion “at the close of all evidence” as to whether defendant Robles (1) violated plaintiffs Fourth Amendment rights in arresting him for DWI and (2) was entitled to qualified immunity. Counsel set forth
 
 *427
 
 specific grounds for the relief sought, claiming that the evidence was insufficient to show a lack of probable cause as to the DW1 arrest, and that the evidence demonstrated the officers acted reasonably and without the belief that they were violating plaintiffs constitutional rights.
 

 Having decided that defendant met the procedural requirements of Rule 50, we next address the sufficiency of the evidence. Judgment as a matter of law should be granted only when:
 

 (1) there is such a complete absence of evidence supporting the verdict that the jury’s findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the mov-ant that reasonable and fair-minded [persons] could not arrive at a verdict against [it].
 

 Cruz,
 
 34 F.3d at 1154.
 

 “A district court must deny a motion for judgment as a matter of law unless, viewed in the light most favorable to the nonmov-ing party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.”
 
 Id.
 
 at 1154-55 (internal citation and quotations omitted).
 

 Here, defendant Robles claims that he is entitled to judgment as a matter of law as to plaintiff’s claim of unlawful arrest “because it is clear from all the testimony that Trooper Robles was not the arresting officer” and “[e]ven assuming, arguendo, that his role played a part in Trooper Williams!’] decision to arrest the plaintiff, the credible evidence supports a finding of probable cause.” (Def.Mem. at 14.)
 

 A. Defendant’s Personal Involvement in Plaintiffs Arrest
 

 A defendant in a § 1983 action may not be held responsible unless he was personally involved in the alleged constitutional violations. The Second Circuit has held that “personal involvement” for these purposes means “direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.”
 
 Black v. Coughlin,
 
 76 F.3d 72, 74 (2d Cir.1996).
 

 Thus, in a case in which an arrestee alleged that several police officers “all participated in a group arrest [of plaintiff] in which excessive force was allegedly used,” the court held that plaintiff had alleged direct participation on the part of the defendants sufficient to withstand a motion to dismiss the complaint.
 
 Messina v. Mazzeo,
 
 854 F.Supp. 116, 127 (E.D.N.Y.1994). The Second Circuit found that an allegation that a corrections officer declared that it was “open season” on an inmate who subsequently was beat by other inmates outside the presence of the officer was sufficient to meet the personal involvement requirement of § 1983 as to the officer.
 
 Snider v. Dylag,
 
 188 F.3d 51, 54 (2d Cir.1999).
 

 Here, there was ample evidence before the jury to support a finding that Robles was directly involved with plaintiff’s arrest. Although defendant Williams was the arresting officer, the jury could have found that Robles initiated the arrest. As discussed above, Robles testified as follows: First, he said that his sergeant told him at the scene of the purported burglary that if he did not believe Whitton and Trail were involved in the burglary, he could release them. However, when Robles returned to the scene of plaintiff’s traffic stop, Trooper Pierce told him that plaintiff had been drinking. Robles then asked plaintiff, who was handcuffed in the back of the patrol vehicle, whether he had been drinking and plaintiff told him he had. Robles proceeded to perform a gaze nystagmus test on plaintiff. Williams testified that his determination to arrest plaintiff was based in part on Robles’ determination that plaintiff was intoxicated.
 

 
 *428
 
 Accordingly, we find the evidence sufficient to support a jury finding that defendant Robles was directly involved with plaintiffs DWI arrest.
 

 B. Probable Cause
 

 Defendant claims that “the facts support the conclusion that a reasonable trooper would have believed that plaintiff was in fact intoxicated.” (Def.Mem. at 17.) Lawful arrest, that is, arrest with probable cause, “requires the arresting officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.”
 
 Martinez v. Simonetti,
 
 202 F.3d 625, 634 (2d Cir.2000) (internal citation and quotations omitted).
 

 The jury was charged as follows regarding plaintiffs claim that he was deprived of the right to be free from arrest without probable cause:
 

 Under the Fourth Amendment to the United States Constitution, a person may not be arrested without probable cause for such an arrest. This means that an officer must have information that would lead a reasonable person who possesses the same official expertise as the officer to conclude that the person arrested has committed a crime.
 

 An individual can be arrested if a trooper believes that he has committed a misdemeanor or a felony or a traffic law violation. Plaintiff claims that he was unlawfully arrested because there was no probable cause for the arrest. Defendants claim that at the time of the arrest they had probable cause to believe that the plaintiff had committed the crime of driving while intoxicated or driving under the influence of alcohol, therefore, what you must determine is whether defendants had reasonable cause to make an arrest considering all the circumstances.
 

 (Trial Tr. at 580-81.)
 

 Here, the jury determined that defendants Robles and Williams did not have probable cause to arrest plaintiff. Viewing the evidence in the light most favorable to plaintiff, as we must, we cannot say that “there can be but one conclusion as to the verdict that reasonable persons could have reached.”
 

 As discussed above, Williams testified that as the arresting officer, he determined to arrest plaintiff based on “the strong odor of alcoholic beverage on his person,” the “fact that he was driving a vehicle in an erratic way” and the recommendation of Troopers Robles and Pierce. However, plaintiff offered evidence at trial that he did not appear intoxicated, that Trooper Robles did not perform a gaze nystagmus test and that he was not driving in an “erratic way.”
 

 First, plaintiff testified that he told troopers he had five beers over a ten-hour period. He testified that he had three beers with his friends, then went home to shower, change and eat, and then drank two beers while at the dance club. Plaintiff testified that he was in custody for about two hours prior to his arrest. Trail testified that at the time plaintiff offered her a ride home he was able to walk and talk “fine.”
 

 Plaintiff further stated that he was not asked to submit to field sobriety tests and that Robles did not perform a gaze nystag-mus test. Trooper Williams did not note that plaintiff failed a gaze nystagmus field test on plaintiffs DWI bill of particulars despite the fact there was a space to do so under the heading “Probable Cause.”
 

 In addition, Trail testified that plaintiff did not run the stop sign at the intersection of Westchester and Trinity Avenue, but said that when they approached the stop sign, plaintiff “put his blinker on to take a left and stopped at the stop sign; looked both ways.” Williams testified that he did not cite plaintiff for a traffic violation and no such violation was noted on the DWI bill of particulars. Based on this evidence, we hold that there was sufficient support for the jury’s finding that defen
 
 *429
 
 dants arrested plaintiff for BW1 without probable cause.
 

 II. Defendant’s Claim of Qualified Immunity
 

 Defendant Robles claims that even if there was sufficient evidence to support a finding he arrested plaintiff for DWI without probable cause, he is entitled to judgment as a matter of law on qualified immunity grounds. Robles argues that “[i]t is illogical for a jury to have found that Trooper Williams, the arresting officer, was entitled to qualified immunity because a reasonably competent trooper in his position would have found probable cause for the arrest while finding, at the same time, that Trooper Robles, who had no direct involvement in the decision to arrest was not entitled to immunity.” (Def.Mem. at 3.)
 

 The Second Circuit has stated that the “doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known ... or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights.”
 
 Bradway v. Gonzales,
 
 26 F.3d 313, 317-18 (2d Cir.1994) (internal citations and quotations omitted). The right not to be arrested without probable cause has long been clearly established.
 
 Golino v. City of New Haven,
 
 950 F.2d 864, 870 (2d Cir.1991),
 
 cert. denied,
 
 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). However, a police officer is entitled to qualified immunity from a claim for arrest without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed, or (2) officers of reasonable competence could disagree on whether there was probable cause.
 
 Id.
 
 “An officer’s actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances.”
 
 Lennon v. Miller,
 
 66 F.3d 416, 420-21 (2d Cir.1995).
 

 The question of qualified immunity is distinct from the question of probable cause. “It can be objectively reasonable for an officer to believe that probable cause existed for the arrest, even in the absence of a finding that probable cause in fact existed.”
 
 Naccarato v. Oliver,
 
 882 F.Supp. 297, 303 (E.D.N.Y.1995). The Second Circuit, in a case in which it affirmed the district court’s holding that probable cause did not exist, but decided the court should have submitted the issue of qualified immunity to the jury, noted that “we have been authoritatively instructed that the objective reasonableness component of the inquiry as to lawfulness is not the same as the objective reasonableness component of the inquiry as to qualified immunity.”
 
 Oliveira v. Mayer,
 
 23 F.3d 642, 648 (2d Cir.1994), cert.
 
 denied,
 
 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1994). “The result of the distinction between reasonableness as a component of a Fourth Amendment violation and reasonableness as a component of an immunity defense is that an officer is protected in some circumstances even when he ‘mistakenly concludes] that probable cause is present,’ ... i.e., when he reasonably believes that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted.”
 
 Id.
 
 at 649 (internal citation omitted).
 

 Evidence that a defendant’s conduct was improperly motivated does not rebut a defense of qualified immunity and an officer’s subjective belief as to whether probable cause existed is irrelevant to the inquiry.
 
 Crawford-El v. Britton,
 
 523 U.S. 574, 118 S.Ct. 1584, 1592, 140 L.Ed.2d 759 (1998);
 
 see also Anderson v. Creighton,
 
 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). “A subjective inquiry into an official’s personal belief is rejected in favor of an objective analysis of what a reasonable officer in defendant’s position would believe.”
 
 Car
 
 
 *430
 

 tier v. Lussier,
 
 955 F.2d 841, 843 (2d Cir.1992).
 

 The Second Circuit has held that when “the factual record is not in serious dispute ... [,][t]he ultimate legal determination whether ... a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.”
 
 Lennon v. Miller,
 
 66 F.3d 416, 421 (2d Cir.1995) (internal citations omitted). Furthermore, “if — even • when all facts alleged by the nonmoving party are regarded as true — the moving party is still entitled to judgment as a matter of law, then factual disputes however genuine are not material.”
 
 Cartier,
 
 955 F.2d at 845.
 

 Here, as discussed
 
 supra
 
 in Part I.B., there were disputed issues of fact as to some of the events that defendant Robles claims led to his decision that there was probable cause to arrest plaintiff for DWI. Nonetheless, even assuming the truth of plaintiffs evidence and giving plaintiff every reasonable inference, sufficient undisputed facts remain to support a finding that it was objectively reasonable for defendant Robles to believe that probable cause existed for plaintiffs arrest. This is so even if we presume that the jury believed that defendant Robles did not administer a gaze nystagmus test, or that if he did, he misstated its results. The Second Circuit has held that “the intentional falsification must materially contribute to the objective basis for finding probable cause before the defense of qualified immunity will be barred.”
 
 Id.
 
 at 846;
 
 see also Simms v. Village of Albion,
 
 115 F.3d 1098, 1107-08 (2d Cir.1997) (holding that a police officer who failed to inform magistrate he initially stopped arrestee because of his race could nonetheless reasonably rely on validity of search warrant magistrate issued because the omitted information was not “material and necessary to a finding of probable cause”).
 

 When plaintiff was questioned by defendants and other troopers on the scene, he admitted to having had five beers over the course of the evening. Plaintiff does not contest that he smelled of alcohol at the time. The Second Circuit has noted that “[t]he doctrine of qualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances.”
 
 Lennon,
 
 66 F.3d at 424. Had plaintiff offered evidence at trial that defendant Robles arrested him for DWI based solely on a falsified field sobriety test, our decision in this case would be otherwise. However, based on the undisputed facts, we are not prepared to hold that no reasonable officer could have recommended that plaintiff be arrested for DWI. Certainly, reasonable officers could disagree as to whether there was probable cause to arrest a driver stopped in the early morning hours who smelled of alcohol and admitted to having had five beers.
 

 Accordingly, defendant Robles’ Rule 50 motion for judgment as a matter of law is granted on grounds he is entitled to qualified immunity.
 

 III. Defendant’s Rule 59 Motion for a New Trial on Plaintiff’s False Arrest Claim
 

 Pursuant to Rule 50(c) of the Federal Rules of Civil Procedure, “[i]f the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial.” Fed.R.Civ.P. 50(c)(1). Rule 59 states in relevant part that “[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.” Fed.R.Civ.P. 59(a). Where, as here, a party moves jointly under Federal Rules of Civil Procedure 50(b) and 59(a),
 
 *431
 
 the court must rule separately on each motion.
 
 Taylor v. National R.R. Passenger Corp.,
 
 868 F.Supp. 479, 482 (E.D.N.Y. 1994).
 

 A district court may grant a new trial “if it ‘is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.’ ”
 
 Sorlucco v. New York City Police Dep’t,
 
 971 F.2d 864, 875 (2d Cir.1992)
 
 (citing Smith v. Lightning Bolt Productions, Inc.,
 
 861 F.2d 363, 370 (2d Cir.1988));
 
 see also Piesco v. Koch,
 
 12 F.3d 332, 345 (2d Cir.1993) (reaffirming the “seriously erroneous” standard). A court may order a new trial even where substantial evidence supports the jury’s verdict, and the court is not constrained to view the evidence in the light most favorable to the non-movant, as in judgment as a matter of law.
 
 Taylor,
 
 868 F.Supp. at 484. However, the Second Circuit has cautioned that “the jury is empowered and capable of evaluating a witness’s credibility, and this evaluation should rarely be disturbed.”
 
 Dunlap-McCuller v. Riese Org.,
 
 980 F.2d 153, 158 (2d Cir.1992).
 

 Defendant Robles claims that “if judgment as a matter of law is denied and defendant is still found to be liable and is not found to be entitled to qualified immunity, a new trial must be granted in light of the overwhelming evidence presented to show the reasonableness of defendant’s actions.” (Def.Mem. at 21.) We cannot agree.
 

 As discussed above, there was ample evidence for the jury to find that defendants lacked probable cause to arrest plaintiff for DWI, including testimony from Heather Trail that plaintiff did not appear to be intoxicated when he offered her a ride and plaintiff’s testimony that he drank five beers over the course of ten hours. The defendants’ own omissions support plaintiffs case, including evidence that defendants did not cite plaintiff for his alleged failure to stop at a stop sign and defendants’ failure to note the very factors they claim buttressed their determination of probable cause on the DWI bill of particulars used to support plaintiff’s arrest.
 

 Accordingly, defendant’s Rule 59 motion for a new trial on the issue of whether defendant violated plaintiffs Fourth Amendment rights when he arrested plaintiff for DWI is denied.
 

 CONCLUSION
 

 For the foregoing reasons, the Court grants defendant’s Rule 50 motion for judgment as a matter of law on grounds defendant is entitled to qualified immunity and denies defendant’s Rule 59 motion for a new trial as to plaintiffs false arrest claim. The Clerk of the Court is instructed to enter judgment for defendant.
 

 SO ORDERED.
 

 [1]
 

 . Plaintiff Heather Trail settled her claims against both defendants prior to trial.
 
 (See
 
 Pl.Mem. at 2.) This Court signed a Stipulation and Order of Dismissal on July 14, 1999 pursuant to which Trail withdrew with prejudice all claims against defendants Marlando Williams and Robles.