George Beisheim, Jr., J.
This is an action brought by the executor of the estate of the sole stockholder of a corporation in dissolution, against a cobroker and against a purchaser of real estate, to recover from them the difference between the purchase price received by the corporation and the purchase price received by said purchaser who resold the property in question to third parties for $15,000 more than the amount paid to the original seller.
The complaint contains three causes of action against the defendant cobroker and two causes of action against the defendant purchaser. The first cause of action against the cobroker is for the alleged breach, of a fiduciary duty and contractual obligation which plaintiff claims the cobroker owed the plaintiff, in which plaintiff seeks damages for a loss of profit in the sum of $15,000.
The second cause of action is for an accounting, and the third cause of action is for an alleged fraud on the part of the cobroker, in which plaintiff claims damages in the sum of $16,800, plus punitive damages of $100,000.
The two causes of action against the defendant purchaser are for an alleged willful inducement and persuasion of the defendant cobroker to breach his contractual relationship with plaintiff, and for an alleged conspiracy by the said purchaser with the said cobroker to defraud the plaintiff.
The matter is presently before the court on the motion of the defendants brought under OPLB 3211 (subd. [a], par. 7) to dismiss the five causes of action in the complaint on the ground that plaintiff has failed to state good and valid causes of action.
The complaint alleges that Anthony Messina died on October 16, 1970, leaving a last will and testament wherein he appointed plaintiff one of his executors. It states that the will was admitted to probate on December 29, 1970, and that plaintiff qualified and is now acting as such executor. The complaint states that pursuant to a plan of dissolution of the corporation Messina, Inc., wholly owned by the decedent, Anthony Messina, plaintiff employed the real estate agency A. T. Houlihan, Inc., to sell certain real property which constituted an asset of Messina, Inc. The Houlihan agency in turn listed the premises with a number of other real estate brokers including the defendant Katz, who thereafter undertook to and did procure the defendant Thompson as a purchaser of the premises for the agreed price of $50,000.
The complaint alleges further that in January, 1972, when Thompson and plaintiff were negotiating the purchase and sale *1012 of the aforesaid real property, the defendant Katz dealt with two other prospective purchasers of the premises, Drs. Hagadus and Schonberger, but did not pass on their offer of $65,000 to the plaintiff. It is alleged that the defendant Thompson delivered to plaintiff on February 14, 1972 a contract of sale executed by him wherein he agreed to buy the premises for $50,000 and wherein it was stated that A. T. Houlihan, Inc. was the broker who brought about the sale,, and the contract executed by the seller was returned to Thompson on March 17, 1972. It is further alleged that the closing took place and deed to the property was delivered to Thompson on April 27,1972, at which time Thompson paid the seller $50,000 and the seller paid a $3,000 brokerage commission to A. T. Houlihan, Inc., who in turn paid a brokerage commission of $1,500 to the defendant Katz.
The complaint states that on February 8, 1972, prior to his receipt of a contract of sale of the premises from plaintiff, the defendant Thompson presented a contract to Drs. Hagadus and Schonberger to -sell said property to them for $65,000. Sard contract named the defendant Samuel Katz as the broker who brought about the sale. The complaint further alleges that the defendant Thompson paid the defendant Katz the sum of $1,800 as a brokerage commission for the sale of the property to Drs. Hagadus and Schonberger.
Under CPLR 32ll (subd. [a], par. 7), unlike the prior practice, affidavits may be submitted in connection with a motion to dismiss the complaint. In this'connection, affidavits were submitted by the defendants Katz and Thompson and also by their attorney, Martin J. King. The attorney’s affidavit,, however, is in the nature of a memorandum of law, and has been considered as such by the court, since defendants’ attorney disclosed no personal knowledge of the facts. The affidavits of the two defendants themselves denied certain material allegations in the complaint, but the court is convinced that actual disputes of fact exist between the parties which preclude the granting of defendants ’ motion, unless the complaint, or any cause of action pleaded therein, fails to state a cause of action.
Defendants’ first contention is that there was no contractual relationship between the cobroker Katz and the plaintiff and, hence, no fiduciary relationship on the part of Katz to the plaintiff ever arose. The defendants are incorrect in their statement of this legal principle. Katz was a cobroker retained by the principal broker Houlihan. He produced the defendant Thompson as a purchaser and admittedly received from Houlihan one half of the brokerage commission for the sale of the property *1013 from plaintiff to Thompson. There is no question that he was a subagent of the plaintiff, and as such stands in a fiduciary relationship to the principal. (Restatement, 2d, Agency, § 5.)
Instructive on these points is the Appendix to the Restatement of the Law of Agency, 2d (§ 5, pp. 33-35):
“ A subagent is liable to the principal for negligence in performing or failing to perform duties undertaken for the principal. He is also under a duty to account for anything received for the principal and is liable as a fiduciary for any breach of a fiduciary duty. It is in this area that the courts have had the greatest difficulty in understanding that a subagent is in fact an agent of the principal, even though it is obvious that he must be the agent of the principal when he binds the principal while acting in connection with the principal’s affairs. It was formerly said that there was no ‘ privity ’ between principal and subagent, since there was no contract between them, and the older English cases thus held that a subagent , had no duty to account to the principal. There are also a few American cases so holding, apparently based on the same idea of lack of privity. These cases, however, are out of line with the great mass of modern decisions.
“Privity as a requirement is disappearing both in the tort and contract fields, and modern cases recognize that the sub-agent is responsible to the principal as a fiduciary. True, the principal does not pay his salary and he is not liable to the principal for a breach of contract if, as is normal, his only contract is with the agent. He should, however, be responsible to-the principal for failing to pay over anything received for the principal, for careless handling of the principal’s affairs, for negligent failure after undertaking to act, and for any violation of fiduciary duty. If he improperly acquires property, he is a constructive trustee. These results are all consistent with the ordinary rules of agency, torts, and restitution.
“ It is now commonplace that the principal can recover from the subagent money received by the latter for him. A subagent has been held liable to the principal for disobeying orders and for committing a breach of fiduciary duty. ’ ’
Further, New York ■ Jurisprudence (vol. 2, Agency, § 154) states: “ The relation of agency exists between the principal and an authorized subagent. Persons employed by an agent to perform the work of a principal are employees of the principal and not the employees of the agent. The subagent owes to the principal the greatest degree of loyalty. The obligation which he owes to the principal is the same as that of any agent.”
*1014 The second point raised by the defendants is that whatever contractual relationship and fiduciary duty there was on the part of Katz ran not to the plaintiff but to the corporation, Messina, Inc., which was the record owner of the property purchased by Thompson. The court regards this argument as more technical than real. The corporation was in the process of dissolution. The sale of the real estate in question was part of the dissolution proceedings, and the real party in interest in this lawsuit is the plaintiff, as executor of the deceased sole stockholder of the corporation. (Geltman v. Levy, 11 A D 2d 411.)
Accordingly,, defendants’ motion to dismiss the complaint is in all respects denied.