**Marshall MANLEY, Plaintiff,**

v.

**AMBASE CORPORATION, Defendant.**

**No. 96 CIV. 9503(RJW).**

United States District Court,
S.D. New York.

Dec. 1, 2000.

tion ("AmBase") for breach of contract. AmBase filed a counterclaim alleging fraud and seeking reformation of the contract and damages. Manley's breach of contract claim was tried to a jury from May 9 through May 17, 2000.[1] On May 17 the jury returned a verdict in favor of Manley in the amount of $1.8 million. Tr. at 826–27.[2] AmBase now moves for judgment as a matter of law pursuant to Rule 50(b), Fed.R.Civ.P., and for a new trial pursuant to Rule 59(a), Fed.R.Civ.P. For the following reasons, both of AmBase's motions are granted and a new trial is ordered.

## BACKGROUND

### I. Manley's Employment at AmBase and Finley Kumble

Manley served as President of the Home Group, Inc. (the "Home Group"), which later became AmBase, from March 8, 1985 through March 15, 1990. He also served as a Director of the Home Group and AmBase from March 8, 1985 through January 31, 1991. P.T.O. para. 2.[3] From December 18, 1987 through March 15, 1990, Manley served as Chief Executive Officer of the Home Group, then AmBase. *Id.*

In 1981, prior to commencing his employment with the Home Group, Manley incorporated a professional corporation under the laws of California called Marshall Manley P.C., which served as a partner at the law firm of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey ("Finley Kumble"). Tr. at 107, 180, 184; Def. Ex. B.[4] Manley was the sole shareholder of Marshall Manley P.C. Tr. at 44.

George Scharffenberger, the Chairman and Chief Executive Officer of the Home Group, in discussions leading to Manley's employment as President, requested that

Mccullough, Goldberger & Staudt, White Plains, NY, William Simon, of counsel, for Plaintiff.

Collier, Cohen & Halpern, LLP, White Plains, NY, Philip M. Halpern, of counsel, for Defendant.

## OPINION

WARD, District Judge.

Plaintiff Marshall Manley brought an action against defendant AmBase Corpora-

---

1. AmBase's counterclaims were severed and the parties consented to a bench trial. The case was tried and is presently *sub judice.*

2. References to "Tr." are to the trial transcript.

3. References to "P.T.O." are to the "Undisputed Facts" section of the parties' Joint Pre-Trial Order.

4. References to "Def. Ex." are to Defendant's Exhibits.

Manley remain at Finley Kumble after Manley commenced his employment with the Home Group. *Id.* at 89–93. Manley never told anyone at the Home Group, or later, AmBase, about Scharffenberger's request. *Id.* at 254–58. AmBase had a custom and practice that requests that its officers and directors serve at unaffiliated entities be made to the personnel committee which would, if appropriate, authorize the appointment. *Id.* at 473; J. Ex. 2, 7, 8, 9, 11, 12, 17, 18, 21, 215, and 216;[5] Def. Ex. F, at 10–11, 26–27. Manley never requested that AmBase's personnel committee pass a resolution authorizing him to continue serving at Finley Kumble. Tr. at 256.

Marshall Manley P.C. continued to serve as a Finley Kumble partner until 1987, when it withdrew as a partner and agreed to continue at the firm in an "of counsel" role. *Id.* at 107; J. Ex. 11, at 3. Scharffenberger and the AmBase Board of Directors knew that Marshall Manley P.C. was a partner at Finley Kumble while Manley was employed by AmBase. Tr. at 82; J. Ex. 4, at 2; J. Ex. 6, at 1; J. Ex. 11, at 4; J. Ex. 42; J. Ex. 45. They also knew that Marshall Manley P.C. was receiving compensation from Finley Kumble at the same time Manley was receiving compensation from AmBase. Tr. at 469.

## II. The Finley Kumble Bankruptcy

In February 1988, Finley Kumble became the subject of an involuntary petition under the federal bankruptcy laws. P.T.O. para. 4. The trustee of the Finley Kumble bankruptcy estate, Francis Musselman (the "Trustee"), and certain creditors of the estate, commenced actions against Manley and Marshall Manley P.C. (the "Finley Kumble Bankruptcy Actions"). Tr. at 108; J. Ex. 87, 88; P.T.O. para. 5.

Manley told Scharffenberger about the Finley Kumble Bankruptcy Actions, at which point AmBase retained the law firm of Cravath, Swaine & Moore ("Cravath")

to defend Manley in these actions. Tr. at 109–10; P.T.O. para. 6. AmBase also retained a bankruptcy law firm, Zalkin, Rodin & Goodman ("Zalkin"), and an accounting firm, Grant Thornton, to assist Manley in his defense of the Finley Kumble Bankruptcy Actions. P.T.O. para. 7. The fees of Cravath, Zalkin, and Grant Thornton were paid by AmBase. Tr. at 111; P.T.O. para. 8.

## III. The 1991 Trustee Settlement Agreement

Manley, Marshall Manley P.C., and the Trustee entered into a settlement agreement, dated September 24, 1991 (the "1991 Trustee Settlement Agreement"), which resolved the Finley Kumble Bankruptcy Actions in exchange for certain undertakings and future payments to be made by Manley. P.T.O. para. 9. Manley was required to pay $1.452 million four years after the date of the agreement, and $1.68 million five years after the date of the agreement. Manley was also required to pay a percentage of his income in the sixth year after the date of the agreement and continue to do so until 2001. Tr. at 126–27. The present value of the settlement in 1991 was estimated to be $4.5 million.

Paul Dodyk of Cravath negotiated the 1991 Trustee Settlement Agreement on Manley's behalf. *Id.* at 125, 306–07. Manley told Scharffenberger that he had entered into the 1991 Trustee Settlement Agreement soon after it was executed. *Id.* at 232–35. The agreement was also disclosed to the Bankruptcy Court by the Trustee, and was the subject of press articles. P.T.O. para. 10.

## IV. The 1991 AmBase Action and 1993 AmBase Settlement Agreement

On October 22, 1991, Manley filed an action against AmBase (the "1991 AmBase Action"). J. Ex. 85; P.T.O. para. 13. In the Third Claim for Relief, Manley sought a declaration that he was entitled to in-

---

**5.** References to "J. Ex." are to Joint Exhibits.

demnification for various shareholder derivative actions and other litigations. Paragraph 24 of the complaint listed eighteen litigations for which Manley was seeking indemnification. J. Ex. 85, at 8–9, para. 24. Neither paragraph 24 nor any other portion of the complaint in the 1991 AmBase Action identifies the Finley Kumble Bankruptcy Actions or Manley's obligation to make payments to the Trustee. Manley never amended the complaint to identify the Finley Kumble Bankruptcy Actions, or his obligation to make payments to the Trustee. Tr. at 562.

Manley and AmBase resolved the 1991 AmBase Action pursuant to a written agreement dated May 27, 1993 (the "1993 AmBase Settlement Agreement"). P.T.O. para. 14. Paragraph 5 of the agreement stated, in relevant part:

> 5. (a) If Manley has been or is made a party or is threatened to be made a party to any action, suit or proceeding ... by reason of the fact that he was a director or officer of AmBase or any current or former subsidiary of AmBase, or by reason of the fact that he was serving at the request of AmBase as a director, officer, member, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise ... he shall be indemnified and held harmless by AmBase to the fullest extent authorized by Delaware law, as the same exists or may hereafter be amended, against all expense, liability and loss ... reasonably incurred or suffered by Manley in connection therewith, including, without limitation, payment of expenses incurred in defending a Proceeding prior to the final disposition of such Proceeding.
>
> (b) If a claim under ¶ 5(a) is not paid in full by AmBase within 30 days after a written claim has been received by the Company, Manley may at any time thereafter bring suit against AmBase to recover the unpaid amount of the claim and, if successful in whole or in part, Manley shall be entitled to be paid also the expense of prosecuting such claim. It shall be a defense to any such action that Manley has not met the standards of conduct which make it permissible under Delaware law for the Company to indemnify him for the amount claimed; *provided however,* that the allegations, facts and circumstances which form the basis of any claims that AmBase asserted against Manley in the Action shall not be considered as a basis for refusing any indemnification which Manley is otherwise entitled to hereunder or at law.

J. Ex. 68, at 6, para. 5.

## V. The 1993 Trustee Settlement Agreement

On December 30, 1993, Manley and Marshall Manley P.C. entered into a settlement agreement (the "1993 Trustee Settlement Agreement") with Albert Togut, the Finley Kumble Liquidation Trustee (the "Liquidation Trustee"), pursuant to which Manley and Marshall Manley P.C. agreed to pay $2.43 million in full satisfaction of all sums due under the 1991 Trustee Settlement Agreement. J. Ex. 75. After payment of the settlement, the Finley Kumble Bankruptcy Actions against Manley and Marshall Manley P.C. were dismissed with prejudice by Orders of the Bankruptcy Court dated October 12, 1994. J. Ex. 84. Manley entered into the 1993 Trustee Settlement Agreement without the knowledge or participation of AmBase. During the negotiations leading to the 1993 Trustee Settlement Agreement, Manley and Marshall Manley P.C. were represented by Peter Calamari, who was not retained by AmBase.

By letter dated July 22, 1996, Manley made a demand upon AmBase for indemnification for the $2.43 million paid to the Liquidation Trustee. J. Ex. 126. AmBase first learned of this claim when it received Manley's demand letter. Tr. at 942. By letter dated October 3, 1996, AmBase rejected the claim. J. Ex. 127.

## DISCUSSION

AmBase moves for judgment as a matter of law and, in the alternative, for a new trial, on several grounds: first, that Manley failed to give AmBase notice of, and an opportunity to defend, the Finley Kumble Bankruptcy Actions and settlement; second, that Manley did not act in good faith and acted in a manner opposed to the best interests of AmBase; third, that AmBase never actually hired Manley, and therefore, it could not have made a request that he serve at Finley Kumble; fourth, that Manley never served at Finley Kumble at the request of AmBase because the partner at Finley Kumble was, in fact, Marshall Manley P.C.[6] The Court finds that AmBase is entitled to have the jury verdict set aside because Manley failed to prove that he served as a partner at Finley Kumble at the request of AmBase. The Court also finds that judgment as a matter of law should not be entered in favor of AmBase, but instead, a new trial is warranted.

## I. The Jury's Verdict Should be Set Aside

■ In ruling on a renewed motion pursuant to Rule 50(b), Fed.R.Civ.P., for judgment as a matter of law after trial a district court must consider the evidence in the light most favorable to the non-movant, giving that party the benefit of all reasonable, favorable inferences the jury might have drawn from the evidence. *Jones v. Spentonbush–Red Star Co.*, 155 F.3d 587, 591 (2d Cir.1998). The court should not consider the credibility of the witnesses or otherwise assess the weight of conflicting evidence, since that is the jury's role. *Id.* Furthermore, when considering the jury's verdict, the court must recognize that "juries are presumed to follow the law as instructed to them by the court." *Branch v. Ogilvy & Mather, Inc.*,

772 F.Supp. 1359, 1362 (S.D.N.Y.1991). Thus, the court may set aside a jury verdict only if

> no evidence exists to support the jury's verdict and the verdict it reached could have been based on nothing more than surmise and conjecture or where there is such overwhelming evidence in favor of the movant that reasonable and fair-minded jurors could not arrive at a verdict against the movant.

*Jones*, 155 F.3d at 591.

## A. Reasonableness of the Settlement and Notice to the Indemnitor

AmBase first argues that Manley failed to establish at trial that he gave AmBase a reasonable opportunity to defend him in the Finley Kumble Bankruptcy Actions or to approve the 1991 Trustee Settlement Agreement. Therefore, AmBase argues, Manley was required to prove his actual liability in the Finley Kumble Bankruptcy Actions, which he failed to do. Manley counters that he was only required to prove his potential liability because he afforded AmBase sufficient notice and an opportunity to defend him.

In *Atlantic Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106 (2d Cir.), *cert. denied*, 479 U.S. 817, 107 S.Ct. 75, 93 L.Ed.2d 31 (1986), the court held that

> an indemnitee can only recover from an indemnitor upon proof of the indemnitee's potential liability if (1) the settlement is reasonable, and if (2) the indemnitor has sufficient notice in which to object to the settlement terms. When the indemnitor objects and the indemnitee fails to tender the defense of the action, the indemnitee must prove actual liability.

*Id.* at 112. "Notice" in this context means notice sufficient to give the indemnitor a

---

**6.** AmBase also argues that Manley's damages were not reasonably suffered or incurred, and that Manley was not serving at the request of AmBase because he chose to serve for his own financial benefit. The Court finds that

AmBase is not entitled to have the jury verdict set aside on either of these grounds, and will only address the first four arguments made by AmBase.

meaningful opportunity to defend the action. *Id.* at 113. If notice is lacking, the indemnitee must prove actual liability. *Id.*

For the following reasons, the jury could have found that Manley's settlement of the Finley Kumble Bankruptcy Actions was reasonable and that Manley gave AmBase sufficient notice of the settlement so that Manley only had to prove his potential liability. Furthermore, the jury could have found that Manley did in fact prove his potential liability.

### 1. Reasonableness of the Settlement

■ Manley testified that he was being sued for "hundreds of millions of dollars." Tr. at 109. The jury heard testimony that the Finley Kumble Bankruptcy Actions were settled in the 1991 Trustee Settlement Agreement for an amount having a present value of $4.5 million. In addition, the Trustee testified that this settlement was the best that could be achieved by Manley's attorney at that time. *Id.* at 249–50.

Dodyk, Manley's attorney, testified that the Finley Kumble Bankruptcy Actions would have taken enormous time, effort, and attention, and that if the parties did not settle, there was a risk that a judgment would be rendered against Manley. Thus, weighing the risks of a substantial judgment against the terms of the settlement, Dodyk recommended to Manley that he settle the actions. Tr. at 300–01. Based on the foregoing, the jury could have found that the 1991 Trustee Settlement Agreement was reasonable.

However, Manley sought, and was awarded, indemnification for the *1993* Trustee Settlement Agreement, under which he paid $2.43 million to the Trustee. Tr. at 143. This settlement was reasonable since it was negotiated at arm's length and was a more favorable settlement to Manley, and thus the indemnitor, than the 1991 settlement. Accordingly,

the jury could have concluded that Manley's settlement with the Trustee in 1991, and subsequent settlement in 1993, were both reasonable.

### 2. Sufficient Notice

■ In *Atlantic Richfield,* the court required the indemnitee to prove actual liability because the only notice it gave to the indemnitor of a proposed settlement with a third party was a telephone call by the indemnitee's counsel to the indemnitor's counsel on the night before the settlement. *Id.* at 112. The indemnitee neither offered the indemnitor a meaningful opportunity to approve the settlement nor to assume the defense of the action. Furthermore, the indemnitee failed to give notice to the indemnitor that it intended to seek indemnity for any damage for which it might be held liable. *Id.*

In the present case, the jury could have found that Manley gave AmBase sufficient notice of the Finley Kumble Bankruptcy Actions and his settlement of those actions. As discussed above, notice in this context includes notice sufficient to give the indemnitor a meaningful opportunity to defend the actions. *See id.* at 113. The proof at trial showed that, not only did Manley give AmBase a meaningful opportunity to defend the actions, but that AmBase did in fact provide Manley with a defense team.

Manley testified that when he told Scharffenberger about the Finley Kumble Bankruptcy Actions, Scharffenberger said he was going to have Cravath defend Manley. Cravath then commenced its representation of Manley in the Finley Kumble Bankruptcy Actions. In addition, AmBase hired and paid Zalkin and Grant Thornton to assist in Manley's defense. Tr. at 109–11.[7]

Furthermore, Manley testified that during his employment at AmBase, he dis-

---

7. The jury apparently rejected AmBase's argument that the defense team was hired so that Manley would not be distracted from his duties at AmBase, not because AmBase intended to indemnify Manley. The Court defers to the jury's determination.

cussed the Finley Kumble Bankruptcy Actions with Scharffenberger, keeping him apprised of the progress of the actions. *Id.* at 120. Manley specifically testified that he reported to Scharffenberger about the settlement negotiations. *Id.* at 153. Therefore, the jury could have found that Manley provided AmBase with sufficient notice of the Finley Kumble Bankruptcy Actions and settlement so that he only had to prove his potential liability at trial.[8]

### 3. Potential Liability

The jury also could have concluded that Manley proved his potential liability in the Finley Kumble Bankruptcy Actions. Manley testified that he was being sued by creditors, banks, office suppliers, and landlords for "hundreds of millions of dollars." Tr. at 109. Dodyk testified that after evaluating the strength of the Trustee's case against Manley, he believed there was a possibility that a substantial judgment would be rendered against Manley. *Id.* at 300–01. The jury could have found this testimony credible and that Manley was potentially liable in the Finley Kumble Bankruptcy Actions.

### 4. The Court's Jury Instruction

■ AmBase also argues that the Court's failure to instruct the jury on the requirement that Manley give notice to AmBase of his claim for indemnification was an error requiring that the verdict be set aside. The Court considered this requested charge on several occasions but ultimately chose not to instruct the jury on this issue. In response to AmBase's argument that notice and an opportunity to defend should be charged to the jury, the Court stated:

I don't know how much more notice you could give than telling someone there is a claim against me in connection with a bankruptcy and that someone says we will pay a lawyer to represent you. This isn't some lawyer that was picked up off the street. This is one of the largest law firms in the city and I note foremost. Mr. Dodyk represented Mr. Manley. Together they were doing their best to minimize the exposure of Mr. Manley. He now says that exposure should be borne by AmBase. But AmBase knew or could have known as much as they wanted to. They were aware to the extent they authorized his representation by Cravath, agreed to pay for it.

*Id.* at 745–46. The Court maintains that its decision not to charge the jury on this issue was not error. Nevertheless, even if it was error to refuse to give this jury instruction, it was not an error that justifies setting aside the verdict.

"A jury charge is erroneous if the instruction misled the jury as to the proper legal standard or did not adequately inform the jury of the law." *Hester v. BIC Corp.*, 225 F.3d 178, 186 (2d Cir.2000). A jury's verdict will be set aside based on an erroneous jury charge if the moving party can show that the error was prejudicial in light of the charge as a whole. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 153 (2d Cir.1997).

As discussed above, the jury could have found that Manley gave AmBase notice of his claim for indemnification and that AmBase provided Manley with a defense team. The charge, taken as a whole, properly instructed the jury on the law applica-

8. AmBase argues that the present case is most analogous to *Carey Transp., Inc. v. Greyhound Corp.*, 80 B.R. 646 (S.D.N.Y.1987), in which the court held that an indemnitee had to prove actual liability because it failed to give the indemnitor adequate notice. In *Carey*, the court found that "instead of requesting that [the indemnitor] defend the claim, or indicating in any way that [the indemnitor] should defend, [the indemnitee] took the matter entirely and exclusively into its own hands and entered into a settlement ... without telling [the indemnitor] what was transpiring." *Id.* at 654. In the present case, Manley discussed the Finley Kumble Bankruptcy Actions with Scharffenberger, who then retained and paid for Manley's defense team. Thus, the present case is distinguishable from *Carey*.

ble to this case and each party's obligations under the contract in question.

## B. Good Faith

AmBase next argues that Manley failed to prove that he acted in good faith, and in a manner not opposed to the best interests of AmBase. Paragraph 5(a) of the 1993 AmBase Settlement Agreement states that if Manley meets certain criteria, "he shall be indemnified and held harmless by AmBase to the fullest extent authorized by Delaware law." J. Ex. 68 at 6, para. 5(a). Under Delaware law, a corporation has the power to indemnify a person if, *inter alia*, "the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation." Del.Code Ann. tit. 8, § 145 (1999). The Court instructed the jury in accordance with the standard set forth in § 145 and defined "good faith" as "a state of mind consisting of honesty and belief [of] purpose or faithfulness to one's duty or obligation." Tr. at 775. Based on these instructions, the jury could have found that Manley acted in good faith and in a manner that he reasonably believed to be in or not opposed to the best interests of AmBase. The Court has considered each of AmBase's arguments to the contrary and finds them to be without merit.

AmBase argues that Manley's lack of good faith is evidenced by his failure to tell anyone at AmBase about Scharffenberger's request that he serve at Finley Kumble. AmBase points out that Manley never went to AmBase's Board of Directors to request a formal resolution authorizing him to serve at Finley Kumble even though he knew that it was AmBase's custom and practice to pass a resolution in such a situation. *Id.* at 256. The jury could have concluded that this did not evidence a lack of good faith by Manley because he could have believed that Scharffenberger's request was sufficient to constitute the requisite Board action. Furthermore, there was evidence presented which showed that AmBase's Board of Directors knew as early as June 26, 1985, and did not object to the fact, that Marshall Manley P.C. was a partner at Finley Kumble while Manley was employed by AmBase. J. Ex. 4, at 2. Thus, although it might have been preferable to AmBase that Manley seek a formal resolution from the Board, his failure to do so did not necessarily constitute a lack of good faith.

AmBase next argues that Manley's lack of good faith is demonstrated by his failure to give AmBase a reasonable opportunity to take over the defense of the Finley Kumble Bankruptcy Actions or approve the settlement of those Actions. As discussed above, the jury could have found that AmBase's provision of a defense team to Manley and payment of the defense team's bills constituted sufficient notice and an opportunity to defend Manley in the Finley Kumble Bankruptcy Actions.

AmBase also argues that Manley's lack of good faith is evidenced by his failure to identify the Finley Kumble Bankruptcy Actions in the complaint in the 1991 AmBase Action and his failure to mention his alleged right to indemnification at any time during negotiations leading up to the 1993 AmBase Settlement Agreement. At trial, Manley testified that he did not include the Finley Kumble indemnity claim in the complaint in the 1991 AmBase Action because when he filed the pleading, AmBase was already paying the legal bills associated with the Finley Kumble Bankruptcy Actions, and because the claim for indemnity in the 1991 AmBase Action was for legal fees that AmBase failed to pay on behalf of Manley. Tr. at 237, 270. The jury could have found this explanation for Manley's failure to identify the Finley Kumble Bankruptcy Actions in the 1991 AmBase Action credible and justifiable.

In addition, Manley's failure to mention his alleged right to indemnification for the Finley Kumble Bankruptcy Actions in the negotiations leading to the 1993 AmBase Settlement Agreement did not necessarily

demonstrate Manley's lack of good faith. The jury heard testimony indicating that there were general discussions concerning the indemnity provision in the agreement, not that there were discussions of indemnity for specific litigations. *Id.* at 564–65, 598–99. There was no evidence to suggest that either party believed that the 1993 AmBase Settlement Agreement was limited to indemnification for certain actions to the exclusion of others. Therefore, the jury could have found that Manley's failure to identify his alleged right to indemnification for the Finley Kumble Bankruptcy Actions was not evidence of Manley's lack of good faith.

■ Finally, AmBase argues that Manley's lack of good faith is evidenced by his failure to seek indemnity for the Finley Kumble Bankruptcy Actions until years after the actions were settled. In prior instances where Manley sought indemnification, he did so almost immediately after his claim for indemnification arose. The jury could have concluded that Manley's delay in seeking indemnity did not evidence his lack of good faith. Therefore, the jury could have determined that Manley acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of AmBase.

### C. The Request That Manley Serve at Finley Kumble

■ AmBase next contends that its parent, City Investing Company ("City Investing"), hired Manley, and therefore, if a request to serve at Finley Kumble was made, it was made by City Investing, not AmBase. Accordingly, the provision in paragraph 5(a) of the 1993 AmBase Settlement Agreement requiring that Manley serve "at the request of AmBase" was not satisfied.

Manley testified that Scharffenberger asked him to work at the Home Group, which later became AmBase, while Scharf-

fenberger was Chairman and Chief Executive Officer of the Home Group. Tr. at 65. Scharffenberger asked Manley to join the Home Group as President and to become Chairman of its insurance subsidiary, the Home Insurance Company. *Id.* at 67. Manley commenced his employment in these two positions in March 1985. *Id.* at 71. Furthermore, Manley's "Employment Agreement" was with the Home Group. J. Ex. 44.[9] Although there was some testimony indicating that Manley was also employed by City Investing, it does not contradict the fact that he was also employed by the Home Group, and consequently, AmBase. Therefore, the jury could have found that Manley was hired by the Home Group, which became AmBase, and that Scharffenberger's request that Manley continue to serve at Finley Kumble was a request by AmBase.

### D. The Finley Kumble Partner

AmBase next argues that Manley is not entitled to indemnification because he did not serve as a partner at Finley Kumble at the request of AmBase. Although Manley concedes that, at all relevant times, the partner at Finley Kumble was an entity known as Marshall Manley P.C., not Manley himself, he nonetheless contends that this does not affect his right to indemnification under the 1993 AmBase Settlement Agreement. Manley argues that the distinction between Manley and Marshall Manley P.C. has no legal significance. The Court disagrees and finds that the jury verdict must be set aside on this ground.

■ In interpreting a written contract, " '[w]here the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used.' " *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir.1993) (quoting *Slatt v. Slatt,*

**9.** Although the "Employment Agreement" was not entered into until December 18, 1987, it stated that Manley had been em-

ployed as President of the Home Group since March 1985. J. Ex. 44, at 1.

64 N.Y.2d 966, 488 N.Y.S.2d 645, 477 N.E.2d 1099, 1100 (1985)). "When a claim is made that a duty to indemnify is imposed by an agreement, that agreement must be strictly construed so as not to read into it any obligations the parties never intended to assume." *Haynes v. Kleinewefers and Lembo Corp.*, 921 F.2d 453, 456 (2d Cir.1990); *accord Weissman v. Sinorm Deli, Inc.*, 88 N.Y.2d 437, 646 N.Y.S.2d 308, 669 N.E.2d 242, 246 (1996). Thus, "a court cannot find a duty to indemnify absent manifestation of a 'clear and unmistakable intent' to indemnify." *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993) (quoting *Heimbach v. Metropolitan Transp. Auth.*, 75 N.Y.2d 387, 553 N.Y.S.2d 653, 553 N.E.2d 242, 246 (1990)).

■■ Turning to the language at issue in the present case, paragraph 5(a) of the 1993 AmBase Settlement Agreement states, in relevant part:

> If *Manley* has been or is made a party to any action, suit or proceeding . . . by reason of the fact that *he* was a director or officer of AmBase or any current or former subsidiary of AmBase, or by reason of the fact that *he* was serving at the request of AmBase as a director, officer, member, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, . . . *he* shall be indemnified and held harmless by AmBase . . . .

J. Ex. 68, at 6, para. 5(a) (emphasis added). The term "Manley" refers to Manley, the individual, not Marshall Manley P.C. *See id.* at 1(stating that the agreement is "between Marshall Manley ('Manley') and AmBase Corporation, formerly known as The Home Group, Inc. ('AmBase'), (collectively, the 'Parties')"). Marshall Manley P.C. is not mentioned anywhere in the 1993 AmBase Settlement Agreement.

Interpreting this unambiguous indemnity provision according to its plain meaning, and considering the strict interpretation that must be given to indemnity provisions, it is clear that the indemnity provid-

ed for by the 1993 AmBase Settlement Agreement runs to Manley, the individual, not Marshall Manley P.C. The Court instructed the jury that it "must determine whether plaintiff has proved that AmBase requested that plaintiff serve at the Finley Kumble partnership." Tr. at 773. The use of the term "plaintiff" here could only mean Manley because Marshall Manley P.C. was not a plaintiff in this case. Accordingly, in order to be entitled to indemnification, Manley had to prove that he served at Finley Kumble "at the request of AmBase as a director, officer, member, employee or agent" J. Ex. 68, at 6, para. 5(a).

At trial, Manley argued that he complied with paragraph 5(a) of the 1993 AmBase Settlement Agreement because he served at Finley Kumble as a partner through Marshall Manley P.C. Manley did not argue that he was entitled to indemnification because he served in one of the other roles mentioned in the 1993 AmBase Settlement Agreement, namely, as a director, officer, member, employee, or agent. Manley now concedes that, consistent with the proof at trial, *he* did not serve as a partner at Finley Kumble. Rather, Marshall Manley P.C. served as a partner at Finley Kumble. Accordingly, even drawing all reasonable inferences in Manley's favor, the jury could not have found that Manley served as a partner at Finley Kumble at the request of AmBase.

Manley argues that there is essentially no difference between Manley and Marshall Manley P.C. and that AmBase knew that Manley served at Finley Kumble through Marshall Manley P.C. Thus, according to Manley, the distinction between Manley and Marshall Manley P.C. is a distinction without a difference for purposes of the settlement agreement. The Court disagrees.

It is a well established principle of corporate law that " 'a corporation is an entity separate and apart from its stockholders, and where an individual . . . seeks the

benefits of the corporate form or method for the ownership and conduct of a business, he ... may not ignore the presence or existence of the corporation, in order to avoid the disadvantages.'" *Commissioner v. Schaefer,* 240 F.2d 381, 383 (2d Cir.1957) (citations omitted); *see also Harris v. Stony Clove Lake Acres Inc.,* 202 A.D.2d 745, 608 N.Y.S.2d 584, 586 (1994) ("A corporation, even when wholly owned by a single individual, has a separate legal existence from its shareholders, and courts are loathe to disregard the corporate form for the benefit of those who have chosen that form to conduct business." (citations omitted)); *Adler v. G & B Fasteners, Inc.,* 143 A.D.2d 614, 532 N.Y.S.2d 898, 899 (1988) ("It is well settled that a corporation is for most purposes an entity separate and distinct from its individual members or stockholders and the distinctiveness of a corporate entity persists even though all of its stock is owned by a single individual." (citations omitted)).[10]

Courts have recognized the legal distinction between a corporation and its shareholders in a variety of situations. *See, e.g., Nicholas A. Califano, M.D., Inc. v. Shearson Lehman Bros. Inc.,* 690 F.Supp. 1354, 1355 (S.D.N.Y.1988) (stating that "[a] corporation is an entity distinctly separate from its shareholders," and finding that the sole shareholder's personal arbitration agreement with the defendant was not binding on the sole shareholder's corporation); *Protection Indus. Corp. v. Kaskel,* 262 A.D.2d 61, 691 N.Y.S.2d 457, 457–58

(1999) (finding that agreements which were unambiguously between the plaintiff and the individual defendant only did not bind the corporate defendant); *Signorile v. Soniker,* 260 A.D.2d 361, 687 N.Y.S.2d 709, 710 (1999) (stating that the corporate plaintiff was entitled to enforce a judgment that had been entered in its favor because it was a legal entity separate from its shareholders); *Adler,* 532 N.Y.S.2d at 899 (finding that the corporate defendant was not bound by a settlement agreement entered into by the corporation's sole officer and shareholder on his own individual behalf).

This case presents a situation in which the Court must recognize the distinctiveness of the corporate entity. The 1993 AmBase Settlement Agreement is unambiguously between Manley and AmBase. The Agreement provided that *Manley* could only be indemnified if *he* served at the request of AmBase. However, because only Marshall Manley P.C., and not Manley, served as a partner at Finley Kumble, Manley is not entitled to indemnification on the theory that *he* served as a partner. Having chosen to incorporate in order to enjoy the benefits that come from incorporation, Manley cannot now ignore the corporate form because it suits him to do so.[11]

The Court finds that Manley failed to prove at trial that he was serving as a partner at Finley Kumble at the request of AmBase. Accordingly, the jury's verdict must be set aside because "no evidence

---

10. The parties did not address whether New York or California law governs this issue. California law is relevant because Marshall Manley P.C. was incorporated in California. However, the Court finds that the same result would be reached under both New York and California law, and therefore, will assume that New York law applies. *See, e.g., Stanford Univ. Hosp. v. Federal Ins. Co.,* 174 F.3d 1077, 1086 (9th Cir.1999) (stating that "a corporation is 'an entity separate and distinct from its stockholders, with separate and distinct rights and liabilities; and this is true even though a single individual may own all, or nearly all, of the capital stock'" (citation omitted)).

11. The primary benefit of incorporation is that the individual shareholder is generally shielded from personal liability. *See, e.g., We're Assocs. Co. v. Cohen, Stracher & Bloom, P.C.,* 65 N.Y.2d 148, 490 N.Y.S.2d 743, 480 N.E.2d 357, 359 (1985) ("A principal attribute of, and in many cases the major reason for, the corporate form of business association is the elimination of personal shareholder liability."); *see also id.* at 360 (holding that "absent any showing of [abuse of the corporate form], the shareholders of a professional service corporation cannot be held personally liable for an ordinary business debt of the corporation").

exists to support the jury's verdict and the verdict it reached could have been based on nothing more than surmise and conjecture." *Jones,* 155 F.3d at 591.

## II. A New Trial is Warranted

AmBase has moved for judgment as a matter of law under Rule 50(b), Fed.R.Civ. P., and, in the alternative, for a new trial under Rule 59(a), Fed.R.Civ.P. A court has discretion to grant a new trial under Rule 50(b) in lieu of granting the movant judgment as a matter of law. The grant of a new trial under Rule 59(a) is distinguishable from the discretion to grant a new trial under Rule 50(b):

> The situation [under Rule 50(b) is] that in which the party who has lost before the jury moves for judgment as a matter of law and is entitled to that relief. The district court, if it chooses, may order a new trial rather than enter judgment to give the party who won the verdict an opportunity to introduce more evidence that will make the issue one for the jury in the second trial. Thus, it is a judicial discretion that may provide a benefit for the party who obtained the verdict in the form of a second opportunity to reach the jury.
>
> The alternative motion [under Rule 59(a) ], however, is a remedy for the party who lost the verdict initially and asks for judgment as a matter of law under Rule 50(b). By the alternative motion, he asks the court to grant him a new trial if he is wrong in his contention that he is entitled to judgment.

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2539, p. 360 (1995) (hereinafter "Wright & Miller"). Having determined that the jury's verdict should be set aside, the Court finds that under both rules 50(b) and 59(a), a new trial is warranted.[12]

### A. Rule 50(b)(1)(B)

 Rule 50(b) provides that, "[i]n ruling on a renewed motion [for judgment as a matter of law after trial], the court may: (1) if a verdict was returned: (A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law." Fed.R.Civ.P. 50(b)(1). Under this rule, "the district court has discretion to order a new trial rather than grant judgment as a matter of law if it believes that the defect in the nonmoving party's proof might be remedied on a second trial." 9A Wright & Miller § 2538, p. 357. The Court finds that this case is one where the defect in plaintiff's proof might be remedied on a second trial.

 Notwithstanding this Court's determination that Manley failed to prove at trial that he was serving at Finley Kumble at the request of AmBase because he was not the partner at Finley Kumble, the Court notes that there are other viable theories which could have been, but were not, presented to the jury to support Manley's claim for indemnification. As discussed above, the indemnity provision in the 1993 AmBase Settlement Agreement was not limited to Manley's service as a partner at a law firm. It broadly stated that Manley could be indemnified if he was "serving at the request of AmBase as a director, officer, member, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise." J. Ex. 68, at 6, para. 5(a).

Manley could have argued that he should be indemnified for his service at Marshall Manley P.C., where he was the sole shareholder and president, on the theory that Marshall Manley P.C. was a corporation at which he was serving at the request of AmBase. The Court is not suggesting that Manley would have prevailed with this argument, only that it is a viable theory which Manley could have

---

12. Although the Court's decision to grant a new trial under Rule 50(b) would seem to obviate the need to consider AmBase's Rule 59(a) motion, courts have held that where a party moves jointly under Rules 50(b) and 59(a), the court must rule separately on each motion. *See, e.g., Whitton v. Williams,* 90 F.Supp.2d 420, 430–31 (S.D.N.Y.2000).

presented to the jury. However, Manley never made this argument to the jury and the jury was never instructed in this regard.

Manley also could have argued that he served as Finley Kumble's agent under an agency/subagency theory. New York partnership law provides that every partner is an agent of the partnership under certain circumstances. *See* N.Y. Partnership Law § 20(1) (McKinney 1988); *see also Durkin v. Shea*, 957 F.Supp. 1360, 1366–67 (S.D.N.Y.1997) (stating that "under New York law, a partner is, in fact, an agent of his fellow partners, as well as of the partnership" (citations omitted)). Other entities or individuals may also be the partnership's agents because of their subagency relationship with the partners. "A subagent is a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible." Restatement (Second) of Agency § 5(1) (1958).

"Unless otherwise agreed, authority to appoint a subagent is inferred from authority to conduct a transaction for the principal for the performance of which the agent is to be responsible to the principal if: ... (b) the agent is a corporation, partnership or other organization." *Id.* § 80(b); *see also Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir.1994). The authority of a corporation to appoint a subagent to perform the tasks of the agent may be inferred because "[o]ne employing a corporation as an agent necessarily knows that the corporation must act through agents and hence consents to the use of its employees as subagents." *Id.* at cmt. a. Furthermore, "[a] subagent performing acts which the appointing agent has authorized him to perform in accordance with an authorization from the principal is an agent of the principal." *Id.* § 5, cmt. d; *see also Marra v. Katz*, 74 Misc.2d 1010, 347 N.Y.S.2d 143, 146 (Sup.Ct.1973) ("There is no question that he was a sub-

agent of the plaintiff, and as such stands in a fiduciary relationship to the principal.").

Thus, Manley could have argued at trial that, as a partner at the Finley Kumble partnership, Marshall Manley P.C. was an agent of the law firm, and that Marshall Manley P.C.'s authority to appoint Manley as its subagent could have been inferred from the fact that it is a corporation which can only act through its agents. In addition, Manley could have argued that as an authorized subagent of Marshall Manley P.C., Manley was also an agent of Finley Kumble. Again, the Court is not suggesting that Manley would have persuaded the jury with this argument, but it is a viable argument that may be made at a second trial.

Because Manley's failure at the first trial to establish that he served at Finley Kumble at the request of AmBase might be remedied if a new trial were held, the Court finds that a new trial is warranted rather than entry of judgment as a matter of law in favor of AmBase.

### B. Rule 59(a)

AmBase also moves pursuant to Rule 59(a), Fed.R.Civ.P., for a new trial on the ground that the jury's verdict was against the weight of the evidence. Under Rule 59(a), a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a).

A less stringent standard applies to a motion for a new trial under Rule 59(a) than a motion for judgment as a matter of law under Rule 50(b). *See United States v. Landau*, 155 F.3d 93, 104 (2d Cir.1998). A district court may grant a motion for a new trial if it " 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.' " *Id.* (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir.1988)); *accord DLC Management*

*Corp. v. Town of Hyde Park,* 163 F.3d 124, 133 (2d Cir.1998). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *DLC Management,* 163 F.3d at 133. Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict. *See id.* at 134; *Landau,* 155 F.3d at 104.

 Also unlike a motion for judgment as a matter of law, a trial judge considering a motion for a new trial "is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *DLC Management,* 163 F.3d at 134; *accord Landau,* 155 F.3d at 104. However, this does not mean that a trial judge may "freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Landau,* 155 F.3d at 104. "A jury's credibility assessments are entitled to deference." *Id.* at 104–05. Nevertheless, these principles of deference to the jury "do not override the trial judge's duty to 'see that there is no miscarriage of justice.'" *Id.* at 105 (quoting *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978)). Therefore, the court should only grant a Rule 59 motion "when the jury's verdict is 'egregious.'" *DLC Management,* 163 F.3d at 134 (quoting *Dunlap–McCuller v. Riese Org.,* 980 F.2d 153, 158 (2d Cir.1992), *cert. denied,* 510 U.S. 908, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993)).

██ In the present case a new trial is warranted because the jury's verdict was against the weight of the evidence presented at trial. As discussed above in more detail, Manley attempted to establish at trial that he served as a partner at Finley Kumble at the request of AmBase and was therefore entitled to indemnification. However, the evidence showed, and Manley concedes, that he did not in fact serve as a partner at Finley Kumble, rather, Marshall Manley P.C. served as the partner. There was no other evidence pre-

sented at trial which showed that Manley served "at the request of AmBase as a director, officer, member, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise." J. Ex. 68, at 6, para. 5(a). Even giving the jury the deference to which it is entitled, the verdict was against the weight of the evidence and was seriously erroneous. Therefore, the Court grants AmBase's motion for a new trial under Rule 59(a).

## CONCLUSION

For the foregoing reasons, AmBase's motions to set aside the jury's verdict and for a new trial pursuant to Rules 50(b) and 59(a), Fed.R.Civ.P., are granted and a new trial is ordered. The parties are directed to appear for a conference on December 15, 2000 at 11:00 A.M.

It is so ordered.